# DEBS *v.* UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF OHIO.

No. 714.   Argued January 27, 28, 1919.—Decided March 10, 1919.

The delivery of a speech in such words and such circumstances that the probable effect will be to prevent recruiting, and with that intent, is punishable under the Espionage Act of June 15, 1917, c. 30, § 3, 40 Stat. 217, as amended by the Act of May 16, 1918, c. 75, § 1, 40 Stat. 553.   P. 212.

Such a speech is not protected because of the fact that the purpose to oppose the War and obstruct recruiting, and the expressions used in that regard, were but incidental—parts of a general propaganda of socialism and expressions of a general and conscientious belief.   P. 215.

In a prosecution for obstructing and attempting to obstruct recruiting, by a speech in which defendant expressed sympathy with others, imprisoned for similar offenses, the grounds for whose convictions he purported to understand, *held*, that the records in the other cases were admissible as tending to explain the subject and true import of defendant's remarks, and his intent.   *Id.*

In such prosecution, *held*, that a document,—a so-called "Anti-War Proclamation and Program,"—expressing and advocating opposition to the War, was admissible against the defendant as evidence of his intent, in connection with other evidence that, an hour before his speech, he expressed his approval of such platform.   *Id.*

*Semble,* that persons designated by the Draft Act of May 18, 1917, registered and enrolled under it and thus subject to be called into active service, are part of the military forces of the United States within the meaning of § 3 of the Espionage Act.   P. 216.

Affirmed.

THE case is stated in the opinion.

*Mr. Seymour Stedman,* with whom *Mr. William A. Cunnea, Mr. Joseph W. Sharts, Mr. Morris H. Wolf* and *Mr. Isaac Edward Ferguson* were on the brief, for plaintiff in error.

*Mr. John Lord O'Brian*, Special Assistant to the Attorney General, with whom *Mr. Alfred Bettman*, Special Assistant to the Attorney General, was on the briefs, for the United States.

*Mr. Gilbert E. Roe*, by leave of court, filed a brief as *amicus curiæ*.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an indictment under the Espionage Act of June 15, 1917, c. 30, § 3, 40 Stat. 217, 219, as amended by the Act of May 16, 1918, c. 75, § 1, 40 Stat. 553. It has been cut down to two counts, originally the third and fourth. The former of these alleges that on or about June 16, 1918, at Canton, Ohio, the defendant caused and incited and attempted to cause and incite insubordination, disloyalty, mutiny and refusal of duty in the military and naval forces of the United States and with intent so to do delivered, to an assembly of people, a public speech, set forth. The fourth count alleges that he obstructed and attempted to obstruct the recruiting and enlistment service of the United States and to that end and with that intent delivered the same speech, again set forth. There was a demurrer to the indictment on the ground that the statute is unconstitutional as interfering with free speech, contrary to the First Amendment, and to the several counts as insufficiently stating the supposed offence. This was overruled, subject to exception. There were other exceptions to the admission of evidence with which we shall deal. The defendant was found guilty and was sentenced to ten years' imprisonment on each of the two counts, the punishment to run concurrently on both.

The main theme of the speech was socialism, its growth, and a prophecy of its ultimate success. With that we have nothing to do, but if a part or the manifest intent of the

more general utterances was to encourage those present
to obstruct the recruiting service and if in passages such
encouragement was directly given, the immunity of the
general theme may not be enough to protect the speech.
The speaker began by saying that he had just returned
from a visit to the workhouse in the neighborhood where
three of their most loyal comrades were paying the pen-
alty for their devotion to the working class—these being
Wagenknecht, Baker and Ruthenberg, who had been
convicted of aiding and abetting another in failing to
register for the draft. *Ruthenberg* v. *United States,* 245
U. S. 480. He said that he had to be prudent and might
not be able to say all that he thought, thus intimating
to his hearers that they might infer that he meant more,
but he did say that those persons were paying the penalty
for standing erect and for seeking to pave the way to
better conditions for all mankind. Later he added further
eulogies and said that he was proud of them. He then
expressed opposition to Prussian militarism in a way that
naturally might have been thought to be intended to in-
clude the mode of proceeding in the United States.

After considerable discourse that it is unnecessary to
follow, he took up the case of Kate Richards O'Hare, con-
victed of obstructing the enlistment service, praised her
for her loyalty to socialism and otherwise, and said that
she was convicted on false testimony, under a ruling that
would seem incredible to him if he had not had some ex-
perience with a Federal Court. We mention this passage
simply for its connection with evidence put in at the trial.
The defendant spoke of other cases, and then, after dealing
with Russia, said that the master class has always de-
clared the war and the subject class has always fought the
battles—that the subject class has had nothing to gain
and all to lose, including their lives; that the working
class, who furnish the corpses, have never yet had a voice
in declaring war and have never yet had a voice in declar-

ing peace. "You have your lives to lose; you certainly
ought to have the right to declare war if you consider a
war necessary." The defendant next mentioned Rose
Pastor Stokes, convicted of attempting to cause insubor-
dination and refusal of duty in the military forces of the
United States and obstructing the recruiting service. He
said that she went out to render her service to the cause
in this day of crises, and they sent her to the penitentiary
for ten years; that she had said no more than the speaker
had said that afternoon; that if she was guilty so was he,
and that he would not be cowardly enough to plead his
innocence; but that her message that opened the eyes of
the people must be suppressed, and so, after a mock trial
before a packed jury and a corporation tool on the bench,
she was sent to the penitentiary for ten years.

There followed personal experiences and illustrations of
the growth of socialism, a glorification of minorities, and a
prophecy of the success of the international socialist
crusade, with the interjection that "you need to know
that you are fit for something better than slavery and
cannon fodder." The rest of the discourse had only the
indirect though not necessarily ineffective bearing on the
offences alleged that is to be found in the usual contrasts
between capitalists and laboring men, sneers at the advice
to cultivate war gardens, attribution to plutocrats of the
high price of coal, &c., with the implication running
through it all that the working men are not concerned in
the war, and a final exhortation "Don't worry about the
charge of treason to your masters; but be concerned about
the treason that involves yourselves." The defendant ad-
dressed the jury himself, and while contending that his
speech did not warrant the charges said "I have been ac-
cused of obstructing the war. I admit it. Gentlemen,
I abhor war. I would oppose the war if I stood alone."
The statement was not necessary to warrant the jury in
finding that one purpose of the speech, whether incidental

or not does not matter, was to oppose not only war in general but this war, and that the opposition was so expressed that its natural and intended effect would be to obstruct recruiting. If that was intended and if, in all the circumstances, that would be its probable effect, it would not be protected by reason of its being part of a general program and expressions of a general and conscientious belief.

The chief defences upon which the defendant seemed willing to rely were the denial that we have dealt with and that based upon the First Amendment to the Constitution, disposed of in *Schenck* v. *United States, ante,* 47. His counsel questioned the sufficiency of the indictment. It is sufficient in form. *Frohwerk* v. *United States, ante,* 204. The most important question that remains is raised by the admission in evidence of the record of the conviction of Ruthenberg, Wagenknecht and Baker, Rose Paster Stokes, and Kate Richards O'Hare. The defendant purported to understand the grounds on which these persons were imprisoned and it was proper to show what those grounds were in order to show what he was talking about, to explain the true import of his expression of sympathy and to throw light on the intent of the address, so far as the present matter is concerned.

There was introduced also an "Anti-war Proclamation and Program" adopted at St. Louis in April, 1917, coupled with testimony that about an hour before his speech the defendant had stated that he approved of that platform in spirit and in substance. The defendant referred to it in his address to the jury, seemingly with satisfaction and willingness that it should be considered in evidence. But his counsel objected and has argued against its admissibility, at some length. This document contained the usual suggestion that capitalism was the cause of the war and that our entrance into it "was instigated by the predatory capitalists in the United States." It alleged that the war

of the United States against Germany could not "be justified even on the plea that it is a war in defence of American rights or American 'honor.'" It said "We brand the declaration of war by our Government as a crime against the people of the United States and against the nations of the world. In all modern history there has been no war more unjustifiable than the war in which we are about to engage." Its first recommendation was, "continuous, active, and public opposition to the war, through demonstrations, mass petitions, and all other means within our power." Evidence that the defendant accepted this view and this declaration of his duties at the time that he made his speech is evidence that if in that speech he used words tending to obstruct the recruiting service he meant that they should have that effect. The principle is too well established and too manifestly good sense to need citation of the books. We should add that the jury were most carefully instructed that they could not find the defendant guilty for advocacy of any of his opinions unless the words used had as their natural tendency and reasonably probable effect to obstruct the recruiting service, &c., and unless the defendant had the specific intent to do so in his mind.

Without going into further particulars we are of opinion that the verdict on the fourth count, for obstructing and attempting to obstruct the recruiting service of the United States, must be sustained. Therefore it is less important to consider whether that upon the third count, for causing and attempting to cause insubordination, &c., in the military and naval forces, is equally impregnable. The jury were instructed that for the purposes of the statute the persons designated by the Act of May 18, 1917, registered and enrolled under it, and thus subject to be called into the active service, were a part of the military forces of the United States. The Government presents a strong argument from the history of the statutes that the instruction

was correct and in accordance with established legislative usage. We see no sufficient reason for differing from the conclusion but think it unnecessary to discuss the question in detail.

*Judgment affirmed.*