### FAIRCHILD v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. April 29, 1920. Rehearing Denied July 15, 1920.)

### No. 5338.

1. **Army and navy �köö40—Indictment for attempting to cause insubordination and obstructing recruiting sufficient; "publicly."**

An indictment for causing or attempting to cause disloyalty, insubordination, etc., in the military forces, and obstructing the recruiting and enlistment service, alleging that the objectionable utterance was made publicly to certain persons and other persons unknown, sufficiently showed

�kööFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that it was so made as calculated to reach persons in the military service, or who might become recruits, as "publicly" means in public, well known, open, notorious, common, or general, as opposed to private, secluded, or secret.

**2. Army and navy ⊗═40—Whether defendant's language could cause insubordination or obstructing recruiting a question for the jury.**

It was at least a question for the jury whether defendant's statement that, if he were of conscription age and had no dependents and was drafted, he would refuse to serve, and that they could shoot him, but could not make him fight, would have the effect of causing disloyalty, insubordination, etc., in the military forces, or obstruct the recruiting and enlistment service.

**3. Army and navy ⊗═40—"Military forces," within Espionage Act, defined.**

The term "military forces" in Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h), includes all persons designated by statute and subject to be called into active service under it.

[Ed. Note.—For other definitions, see Words and Phrases, Military Forces.]

**4. Army and navy ⊗═40—"Recruiting" and "enlistment," within Espionage Act, defined.**

Within the Espionage Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h), relative to obstructing the recruiting and enlistment service, "recruiting" comprehends the gaining of fresh supplies for the forces, as well by draft as otherwise, and "enlistment" comprehends all males of the legal ages of enlistment, as well as all of the governmental machinery to secure enlistments.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Enlistment.]

**5. Army and navy ⊗═40—Whether objectionable utterance was merely angry outburst a question for the jury.**

On a trial for causing or attempting to cause disloyalty, insubordination, etc., in the military forces, and obstructing the recruiting and enlistment service, whether the objectionable utterance was merely an angry outburst of a man goaded into resentment was a question for the jury, and its finding could not be disturbed, where such conclusion was not the only one which reasonable men, considering all of the surrounding circumstances, might have reached.

In Error to the District Court of the United States for the District of South Dakota; James D. Elliott, Judge.

Fred Fairchild was convicted of offenses, and he brings error. Affirmed.

W. G. Rice, of Deadwood, S. D., and Byron S. Payne, of Pierre, S. D. (John Sutherland, of Pierre, S. D., on the brief), for plaintiff in error.

E. W. Fiske, U. S. Atty., of Sioux Falls, S. D. (Robert P. Stewart, U. S. Atty., of Deadwood, S. D., and George Phillip, Asst. U. S. Atty., of Rapid City, S. D., on the brief), for the United States.

Before SANBORN and STONE, Circuit Judges, and MUNGER, District Judge.

STONE, Circuit Judge. Error from conviction for violation of the Espionage Act of June 15, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 10212a–10212h). The conviction was upon both counts of the indictment, and the sentences were identical and ran concur-

rently. The offenses charged were for the utterance of the language following:

"If I were of conscription age and had no dependents and were drafted, I would refuse to serve. They could shoot me, but they could not make me fight."

The first count charged this as causing or attempting to cause disloyalty, insubordination, mutiny, and refusal of duty in the military forces; the second count, as obstructing the recruiting and enlistment service. The errors here urged are insufficiency of the indictment and insufficiency of the evidence.

[1] The claims as to the indictment are: First, that it does not show that such utterance occurred in the presence of members of the military or recruiting and enlistment services or under circumstances calculated to reach them; second, that the statement charged is not such as naturally to produce the criminal results charged. The indictment charges the utterance to have been made in the county of Haakon, S. D., and that defendant—

"did then and there publicly state, say, and utter to and in the presence of David Lampert, T. J. McGuire, and John H. Gallaher, and to other persons to the grand jurors unknown."

Plaintiff in error's first contention is answered by the decision of this court in Wolf v. United States, 259 Fed. 388, 392, 170 C. C. A. 364, 368, where this precise point was passed upon in the language following:

"The circumstances, as alleged, are that the statements were 'publicly' made to certain named person or persons and 'to other persons to the grand jurors unknown.' 'Publicly' means in public, well known, open, notorious, common, or general, as opposed to private, secluded, or secret. The clear inference from the allegation would seem to be that the statement was uttered in the presence of a number of persons. There is no allegation that any of the immediate listeners were within the enlistment ages. The doctrine of the O'Hare and Doe Cases is that a statement to which wide publicity was given by the defendant would apparently reach men who might become recruits, and that it is unnecessary to prove, and therefore to allege, that such were actually present or actually were reached by the statements. Naturally the extent of publicity would be an important consideration and, within certain limits, decisive. The extent and character of the publicity must be such that the apparent result of the utterance would be obstruction of the recruiting and enlistment service. But these may be generally stated, subject to a bill of particulars in proper instances. No such bill was filed here, and the general allegations that the statements were publicly made to certain persons and to others unknown is sufficient."

[2] We think the second contention, that the words charged could not have the effect of causing disloyalty, insubordination, mutiny, and refusal of duty in the military forces, or obstruction of the recruiting and enlistment service, is ill founded. The language was one of bitter opposition to compliance with the draft law. If the defendant had said, "I advise all persons who are drafted, even those without dependents, to absolutely refuse to serve," there could be no doubt of the sufficiency of the language. We see no difference in effect in the expression:

"If I were of conscription age and had no dependents and were drafted, I would refuse to serve. They could shoot me, but they could not make me fight."

To say the most, the language was reasonably susceptible of the construction by those who heard it as having such meaning, in which case it is for the jury to pass upon. Schenck v. United States, 249 U. S. 47, 52, 39 Sup. Ct. 247, 63 L. Ed. 470; Frohwerk v. United States, 249 U. S. 204, 208, 39 Sup. Ct. 249, 63 L. Ed. 561; Debs v. United States, 249 U. S. 211, 215, 39 Sup. Ct. 252, 63 L. Ed. 566; Pierce v. United States, 252 U. S. 239, 40 Sup. Ct. 205, 64 L. Ed. —— (decided March 8, 1920).

[3, 4] Sufficiency of the evidence is challenged on several grounds. It is claimed that the language is not of a character to naturally tend to produce insubordination in the military forces or obstruction of the enlistment and recruiting service. This contention is answered by what we have just said concerning the same point raised in connection with the indictment. It is also contended that the words were not spoken so as to reach any one in the military forces or connected with the recruiting and enlistment service. This claim is that military forces, within the meaning of the statute, comprehends those organized and in service, and not persons merely registered and subject to future organization and service, and that the recruiting and enlistment service means persons connected with such service. It has been decided by the Supreme Court (Debs v. U. S., 249 U. S. 211, 216, 217, 39 Sup. Ct. 252, 63 L. Ed. 566), and by this court (Anderson v. U. S. [C. C. A.] 264 Fed. 75), that "military forces," in the act, includes all persons designated by the act and subject to be called into active service under it. It has been decided (Schenck v. U. S. 249 U. S. 47, 53, 39 Sup. Ct. 247, 63 L. Ed. 470) that "recruiting" comprehends "gaining fresh supplies for the forces, as well by draft as otherwise." Enlistment is a voluntary act, and, as has been held by this court (Heynacher v. U. S., 257 Fed. 61, 168 C. C. A. 273), comprehends all males of legal ages of enlistment as well as all of the governmental machinery to secure enlistments (O'Hare v. U. S., 253 Fed. 538, 165 C. C. A. 208). The evidence here shows that the statement was made in the presence of George Jackson, who was then in or subsequently entered the military service, and was in a training camp at the time of the trial.

[5] The final challenge of the evidence is that it failed to show that the statement was willfully made. The claim is that it was not intended to affect the prosecution of the war, but was merely an angry outburst of a man who had been goaded into resentment. While the jury might well have accepted this view, yet the evidence was such that such conclusion is not the sole one which reasonable men, considering all of the surrounding circumstances, might have reached. In short, that question was one of fact for the jury (Pierce v. United States, supra), and we cannot interfere with their finding thereon.

The judgment is affirmed.