**Mathew Joseph MASINIA, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 16720.**

United States Court of Appeals
Eighth Circuit.

Nov. 22, 1961.

Paul Scott Kelly, Jr., and James Daleo, Kansas City, Mo., made argument for appellant and was on the brief.

Clark A. Ridpath, Asst. U. S. Atty., Kansas City, Mo., made argument for appellee. F. Russell Millin, U. S. Atty., and Clark A. Ridpath, Asst. U. S. Atty., Kansas City, Mo., were on the brief.

Before VOGEL, VAN OOSTERHOUT and BLACKMUN, Circuit Judges.

VOGEL, Circuit Judge.

This is a criminal prosecution for perjury under 18 U.S.C.A. § 1621. The charges relate to testimony given by the appellant before a federal grand jury. The indictment was in four counts. Each count alleged that the grand jury, sitting in the Western District of Missouri

"* * * was inquiring into a possible violation of Section 2314 of Title 18, United States Code, and specifically into whether jewelry of the value of $5,000.00 or more was stolen from the R. Herz and Brothers Jewelry Store in Reno, Nevada, and, in violation of such section, transported in interstate commerce into the Western District of Missouri, and it was material to said inquiry to ascertain all information concerning the theft and transportation of said jewelry and the identity of all persons who took any part in such theft and transportation."

Each count in the indictment set forth and alleged perjured statements by the appellant, summarized as follows:

Count 1 alleged that the appellant denied being in Reno, Nevada, in March, 1958, whereas he well knew and believed that said testimony was not true.

Count 2 alleged that appellant denied being in the Herz store on March 20, 1958, whereas he well knew and believed that said testimony was not true.

Count 3 alleged that appellant denied staying in the Senator Hotel in Sacramento, California, whereas he well knew and believed said testimony was not true.

Count 4 alleged that appellant denied being in the Herz store on March 20, 1958, whereas he well knew and believed that said testimony was not true.

Upon a plea of not guilty, appellant was tried before a jury, acquitted as to Count 3 but found guilty as to Counts 1, 2 and 4. After denial of appellant's motion for judgment of acquittal or in the alternative for a new trial, appellant was sentenced to a period of five years' confinement on Count 1, five years' confinement on Count 2, such sentence to run consecutively with the sentence imposed on Count 1, and five years' confinement on Count 4, such sentence to run concurrently with the sentence imposed on Count 2, making a total of ten years.

Facts disclosed by the evidence indicate that on March 20, 1958, three men entered the Herz store in Reno, Nevada. One of the three men, subsequently identified by the store clerks as the appellant herein, walked to the back of the store to look at cigarette lighters. (Some 40 fingerprints found on the lighters were also identified as those of appellant.) The other two men who entered stayed in the front portion of the store. Shortly after the three departed, it was discovered that jewelry having a value of $29,820 was missing from a display in the front window. On April 26, 1958, FBI Agents Sims and Meyers interviewed the appellant for the purpose of taking a statement. Appellant was later taken before a magistrate on a charge of grand theft but released because of insufficient evidence. On June 25, 1959, appellant was subpoenaed to appear before a federal grand jury in Kansas City, Missouri. Inquiry was made of the appellant as follows:

"Q. Mr. Masinia, we are exploring some matters relating to a jewelry robber (sic) in Reno, Nevada, on or about May 20, 1958, of the R. Herz and Brothers Jewelry Store, and the matters relating to that and we are interested in any of the loot from the robbery getting into this area. Do you know anything about that? A. No, sir, I do not.

"Q. Have you been in Reno lately in the last couple years? A. Yes, I have been there.

"Q. Were you there in March of 1958? A. No, sir."

Such last answer is the subject matter of Count 1 of the indictment.

Appellant was also asked:

"Q. But you were not in and around the jewelry store of R. Herz and Brothers on March 20? A. I went through there at 12:00 o'clock at night so it would be hard to tell.

"Q. You are telling the Grand Jury that you were not in the jewelry store? A. That is right."

Such answer was the subject matter of Count 2 of the indictment.

The following questions were also asked:

"Q. Where did you stay, at the Senator Hotel at Twelfth and L. Street in Sacramento, California? A. No, sir, no, sir.

"Q. How was that? A. No, sir." Such answer was the subject matter of Count 3 as to which appellant was found not guilty.

Inquiry before the grand jury was also made as follows:

"Q. You were interviewed by Agents Sims and Meyers? A. Yes, sir.

"Q. On April 26, 1958? A. Yes, sir.

"Q. And at that time did you tell them that you had not been in Reno, Nevada, for ten years? A. I told them I went through there at 12:00 o'clock at night.

"Q. You were—you are willing now to correct that statement? A. I told them I went through there at 12:00 o'clock at night. I didn't know that jewelry stores are open at midnight. I have driven by a lot of them, probably.

"Q. The question was, if you were in the jewelry store. A. I was not in the jewelry store but I was in

Reno, Nevada, but the date I do not know."

Such last answer was the subject matter of Count 4 of the indictment.

Sufficiency of the evidence to establish the falsity of the statements given before the grand jury under oath on Counts 1, 2 and 4 is not questioned. We see no point in detailing it here.

The appeal to this court is mainly predicated upon the following:

1. The testimony which is the subject matter of the indictment was not material to any matter within the jurisdiction of the grand jury.

2. The purpose in calling the appellant as a witness before the grand jury was to entrap him with a view toward a subsequent charge of perjury.

3. The testimony which is the subject matter of Count 1 was an inadvertent mistake.

4. The government should have been required to elect between Counts 2 and 4 because they are duplicitous, and the error in submitting both of these counts to the jury was not cured by the form of sentencing.

5. The admission of the testimony of Wolfe, Van Meter, Fleming and Kelly was prejudicially erroneous.

[1, 2] We consider first the contention that the testimony of the appellant before the grand jury was not material to any matter within the jurisdiction of that body. The perjury statute which appellant was charged with having violated, 18 U.S.C.A. § 1621, provides:

" § 1621. *Perjury generally*

"Whoever, having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, *willfully and contrary to such oath states or subscribes any material matter which he does not believe to be true,*

is guilty of perjury, and shall, except as otherwise expressly provided by law, be fined not more than $2,000 or imprisoned not more than five years, or both." (Emphasis supplied.)

To be violative of this statute, the false testimony or perjury must relate to a material matter which was within the jurisdiction of the grand jury to investigate and have the tendency to influence, hamper or mislead its investigation thereof. The issue of materiality is one of law to be determined by the court and not one of fact for the determination of a jury. Sinclair v. United States, 1929, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692; Dolan v. United States, 8 Cir., 1955, 218 F.2d 454, 457, certiorari denied, 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255; United States v. Moran, 2 Cir., 1952, 194 F.2d 623, 626, certiorari denied, 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362; Carroll v. United States, 2 Cir., 1927, 16 F.2d 951, 954, certiorari denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880; 62 A.L.R.2d 1027. The trial court submitted the issue of materiality to the jury and allowed testimony to be presented before the jury on that point. From its verdict, the jury obviously determined that the perjured testimony related to a material matter. Belatedly, during the presentation of a motion for acquittal notwithstanding the verdict, or in the alternative for a new trial, the trial judge, recognizing that the determination of materiality rested with him rather than the jury, stated:

"The first point that has been briefed in your suggestions is the testimony and the question was not material to any matter within the jurisdiction of the Grand Jury and you have suggested that error may have been committed by submitting the question of materiality to the jury rather than ruling it as a matter of law. *Of course I, even at this late date, rule as a matter of law that the evidence was material to a proper investigation by the Grand Jury.* My conclusion as to the point you raised in your motion, that it was

improper to submit that to the jury for decision, certainly cannot be a matter of detriment to the defendant because something that as a matter of law was material, certainly could not be seen as prejudicial to the defendant when that issue was, in fact, submitted to the jury for determination, and they, in turn, found that it was material by the verdict that they returned in connection with it. That issue will, of course, be ruled against the defendant." (Emphasis supplied.)

That point, which is raised here, is of no avail to the appellant. As stated by the trial judge, no prejudice could have resulted to the appellant from the submission of the issue to the jury, where the court agreed with the jury's determination thereof, and, even if belatedly, did rule as a matter of law that the alleged false testimony was material. See United States v. Moran, 2 Cir., 1952, 194 F.2d 623, 626, certiorari denied, 343 U.S. 965, 72 S.Ct. 1058, 96 L.Ed. 1362.

We proceed now to a determination of the question itself; that is, was the alleged false testimony material to any matter properly within the jurisdiction of the grand jury, and did it have a tendency to mislead, influence or hamper the grand jury's investigation of such matter?

■ Counsel for appellant in their brief and at the oral arguments have directed attention to our opinion in Brown v. United States, 8 Cir., 1957, 245 F.2d 549, as authority for the proposition that where it is not shown that the false testimony was material to any matter properly within the jurisdiction of the grand jury, there can be no finding of perjury. The contention made is that here there was no substantial proof that the grand jury was investigating a matter that was properly within their jurisdiction. In the Brown case we reversed a conviction for perjury and directed the dismissal of the charge. There a grand jury in the District of Nebraska caused the defendant to be brought before it for the purpose of extracting testimony

from him with a view to prosecuting him for perjury and without any purpose of obtaining from him any evidence upon which it could find a true bill against anyone for any offense committed in whole or in part in Nebraska. We held that such grand jury was acting beyond its powers and that the answers of the defendant, even if false, could not amount to perjury or be made the basis of a prosecution therefor. In so doing, we stated, 245 F.2d at page 552:

"The record makes it clear that the counts in question have to do with answers given by defendant while under oath before a grand jury called, sworn and sitting in the district of Nebraska and that the offenses charged in these counts have to do with matters which occurred in the Eastern District of Missouri. If the grand jury of Nebraska was without authority to inquire into offenses committed in Missouri, then the answers of defendant, even if false, would not amount to perjury."

But we further observed in that case:

"* * * The broad investigatory powers of a grand jury, as an arm or agency of the court by which it is appointed, extend (in its efforts to uncover criminal offenses prohibited by federal law) to an inquiry into facts that occurred in another district provided that such inquiry has to do with relevant matters. For instance, if a conspiracy is what the inquiry is directed at, the acts and conduct of the alleged conspirators that may have occurred in a district other than that where the grand jury is sitting may be gone into." 245 F.2d at 554.

Thus, if in the instant case the grand jury was investigating a possible federal offense within its jurisdiction, it could inquire as to any acts, related to such offense, that may have taken place outside of its district.

■ We find, first, that the appellant was apprised at the beginning of his testimony before the grand jury that it was

exploring matters relating to a jewel robbery in Reno, Nevada, on or about May [March] 20, 1958, and was interested in any of the loot from the robbery getting into "this area". On March 20, 1958, jewelry valued at approximately $30,000 was taken from the R. Herz and Brothers jewelry store in Reno, Nevada. 18 U.S. C.A. § 2314 makes the transportation in interstate or foreign commerce of any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud, an offense against the United States and provides punishment therefor. If jewelry of a value of $5,000 or more from the Reno robbery had been transported into the Western District of Missouri by someone knowing the same to have been stolen, then § 2314 had been violated and a grand jury sitting in the Western District of Missouri had ample jurisdiction to make inquiry thereinto and to return an indictment against any persons so violating § 2314. The mere fact that the robbery itself occurred in Nevada, and in itself was not a violation of any law of the United States, is immaterial. That the grand jury had information that the stolen property had gotten into the Western District of Missouri, or justification for suspecting this, and that the grand jury was definitely pursuing an investigation along these lines seems clear from the further questioning of the appellant before the grand jury:

"Q. That is the charge of transporting stolen property from another state. Do you know Billie Be-Velle? A. Yes, sir.

"Q. Did you make any arrangements to sell any jewelry for him? A. Never made any arrangements for anyone about jewelry.

"Q. So that you had no part of the loot that may have come from there? A. No part.

"Q. Well, do you know of from any other source of information whether Clara Ponak received a valuable ring from that particular robbery? A. I don't even know her.

"Q. You don't know her? A. I never met the lady. I never heard the name.

"Q. Do you know Howard Hibbs? A. Yes, sir.

"Q. Did you know he is her son-in-law? A. Yes, I still don't know her.

"Q. You still don't know her? A. I wouldn't know her on the street.

"Q. Well, do you know that Clara Ponak admitted to the F.B.I. that she received one of the rings from her son-in-law, Howard Hibbs? A. No, sir.

"Q. If you didn't— A. I don't know the lady so I won't know anything about it.

\* \* \* \* \* \*

"Q. You tell him that you made a jewelry boost in Reno, Nevada? A. No, sir, I didn't make one so I wouldn't tell you or him that.

"Q. So if someone said that you told him that— A. If I made a good score I wouldn't be telling people about it.

"Q. Have you sold any jewelry of any kind to Dave Klein? A. Hardly know Dave Klein."

In order to determine whether § 2314 had been violated in the Western District of Missouri, it was pertinent to make inquiry as to the actual robbery in Reno, Nevada, the value of the jewelry taken and any other facts which might lead to a determination that jewelry valued in excess of $5,000 had been transported from there to the Western District of Missouri. Questions dealing with the appellant's whereabouts at the time of the robbery, his having been seen in Reno, his being in the jewelry store, and his transport in interstate commerce immediately to Sacramento, San Francisco and then to Kansas City in the Western District of Missouri would seem pertinent to the inquiry. A reading of the record here leaves no doubt but what the grand jury was investigating a possible violation of 18 U.S.C.A. § 2314 within its

jurisdiction. The Brown case is not supportive of appellant's contention. We hold that the trial court correctly determined that the alleged false testimony was material to a matter within the competency of the grand jury sitting in the Western District of Missouri and that the alleged false testimony had the tendency to hamper, mislead and prevent further investigation thereof. Blair v. United States, 1919, 250 U.S. 273, 281–283, 39 S.Ct. 468, 63 L.Ed. 979; United States v. Zborowski, 2 Cir., 1959, 271 F.2d 661, 664; Howard v. United States, 8 Cir., 1950, 182 F.2d 908, 913; Carroll v. United States, 2 Cir., 1927, 16 F.2d 951, 953, certiorari denied, 273 U.S. 763, 47 S.Ct. 477, 71 L.Ed. 880.

Appellant has also cited the Brown case, along with United States v. Cross, D.C.D.C., 1959, 170 F.Supp. 303, and United States v. Icardi, D.C.D.C., 1956, 140 F.Supp. 383, to support a contention that

"* * * There is at least a fair inference that the Federal authorities were calling Masinia before the Federal Grand Jury for the purpose of trapping him into testimony similar to that which he had given previously to the F.B.I. agents, so as to form a firm basis upon which he could be charged with perjury."

In all of those cases, the court had held that the investigating body was acting outside of its authority. Both the Cross and Icardi cases dealt with investigations by Congressional Committees for the purpose of eliciting facts that might influence legislation. In each case it was held that the questions asked were not directed with a view toward future legislation, but rather for the purpose of getting information upon which to bring future perjury charges against the witness. Significantly, the court in Cross stated:

"*Although the motives of a congressional committee are irrelevant when it interrogates a witness on matters pertaining to an investigation within the scope of its authority*, the answers responsive to questions which are not asked for the *purpose* of eliciting facts in aid of legislation, even though pertinent, are not 'material' to the authorized investigation; and when a duly constituted investigative committee questions a witness solely for a purpose other than to elicit facts in aid of legislation, that committee steps outside its authority and no longer acts as a competent tribunal." (Emphasis supplied.) 170 F.Supp. at 306.

In the Brown case, discussed supra, we held that the grand jury was without jurisdiction to investigate a crime totally outside of its district. We there said:

"* * * Extracting the testimony from defendant had no tendency to support any possible action of the grand jury within its competency. The purpose to get him indicted for perjury and nothing else is manifest beyond all reasonable doubt." 245 F.2d at 555.

All of the cases cited by appellant are distinguishable from the case at bar. We have here determined that the inquiry made was within the competence of the grand jury, and that the questions asked were material to such investigation. We cannot conclude, upon the record, that the purpose of the questions posed to appellant was to set a trap for a subsequent charge of perjury.

We next consider the claim that the testimony which is the subject matter of Count 1 was an inadvertent mistake. Concededly, false testimony which is the result of an honest mistake or inadvertence does not constitute perjury. United States v. Rose, 3 Cir., 1954, 215 F.2d 617, 622–623. As will be noted from the record, supra, the United States Attorney in his first remarks to the appellant when he appeared before the grand jury referred to the commission of the jewelry robbery in Reno, Nevada, as being *May* 20, 1958, instead of March. Subsequently, the appellant was asked if he had been in Reno in March, 1958, to which he replied, "No, sir." Appellant

believes that such testimony should have been declared an inadvertent mistake as a matter of law.

In examining the testimony of Masinia before the grand jury, the following exchange between the United States Attorney and Masinia is found following a series of questions as to Masinia's itinerary at the time in question:

"A. * * * I was acquitted of this charge and I was asked the same questions.

"Q. What charge? A. What you are talking about. They had me on the robbery charge and they acquitted me.

"Q. Where? A. Right here.

"Q. Who? A. I went . before Gnefkow.

"Q. You did? A. I most certainly did.

"Q. When was that? A. Over a year ago.

"Q. I see. A. It was thrown out of Court for insufficient evidence.

"Q. What kind of a charge was it, Joe? A. Grand theft.

"Q. Grand theft here or in Nevada? A. I don't know, just grand theft.

"Q. Was the charge brought by the authorities of Reno, Nevada? A. No, sir.

"Q. Did the charge originate here? A. Well, all I know is I was arrested and tried here and the charge was grand theft on the Reno jewelry store robbery and was acquitted on it.

"Q. Was this the R. Herz and Brothers store? A. That's it, yes, sir.

"Q. On March 20, 1958? A. That was R. Herz, that was the name of it."

It is clear that the Herz robbery was not for the first time made known to Masinia when the May date was given to him. We do not think it can be said as a matter of law that the appellant was misled by the United States Attorney's inadvertent reference to May instead of March in his introductory remarks preceding the questioning of appellant. Cf., Sinclair v. United States, 1929, 279 U.S. 263, 295–296, 49 S.Ct. 268, 73 L.Ed. 692. We conclude that the issue was one for a jury's determination and accordingly find no error.

■ Appellant nevertheless contends that even if this were a jury issue, he was entitled to a clarifying instruction on the defense of inadvertent mistake. The trial court, after instructing the jury, gave counsel an opportunity of taking exceptions out of the presence of the jury. The following occurred:

"Mr. Daleo: The only thing I have, if Your Honor please,—well, it was to the effect that the testimony was not given inadvertently. The only reason I ask that is because the question asked by Mr. Scheufler was, that it was May the 20th that the investigation was being made.

"The Court: I doubt that there is any warrant or justification for a charge specifically pointing out what is in fact a fact issue as to whether some of that testimony was inadvertently made or not. I think that is proper for the jury to determine, but I doubt that it warrants a specific finding on it by me."

Subsequently, in denying the motion for judgment notwithstanding the conviction or in the alternative for a new trial, the trial court stated, as to this point:

"The point is taken that defendant's testimony, which was the subject matter of Count One, was not wilfully and intentionally false. The short answer to that is that the jury found that it was.

"I think there was no error under the circumstances here in not instructing on inadvertence. I think the evidence was perfectly clear and the instructions were clear, so that the jury properly made an appropriate finding there. I think the mere fact the jury returned a Not Guilty

verdict on Count Three is an indication there was very careful consideration that they gave to all the testimony in this record."

A similar question arose in Spaeth v. United States, 6 Cir., 1955, 218 F.2d 361, 363. Therein, Mr. Justice Stewart, then a Circuit Judge, speaking for the court said:

"Appellant further claims error in the court's refusal to instruct the jury that if appellant had sworn falsely 'inadvertently, inconsiderately, or carelessly,' or 'with a mistaken but honest belief as to the truth of his testimony,' then he must be acquitted. While such an instruction would have been proper, the court adequately covered the point by instructing the jury that willfulness in testifying falsely was 'probably the essence of the offense,' and by defining 'willfully' to mean 'knowingly and intentionally, done with corrupt design or purpose.' Moreover, the requirement of willfulness was repeatedly adverted to by the court throughout the charge."

We have read the trial court's charge in its entirety. It is clear and complete. After reading to the jury 18 U.S.C.A. § 1621, containing the word "wilfully", and Count 1, containing the words "unlawfully, wilfully, knowingly and feloniously", the judge in his charge to the jury said:

"You have noted that the Indictment and the statute make reference to wilfullness, knowingly. 'Knowingly', means a knowledge of the facts which taken together constitute a failure to comply with the statute.

" 'Wilfully' means something not expressed by knowingly. It means purposely or obstinately, one who having a free will or choice, either intentionally disregards the statute or is plainly indifferent to its requirements. If a man intentionally adopts certain conduct in certain circumstances known to him, and that conduct is forbidden by the law, under those circumstances he intentionally breaks the law in the only sense in which the law ever considers intent."

We find the instructions sufficient and conclude that there was no need for the giving of an additional instruction with reference to inadvertent mistake.

Appellant's next contention is that the government should have been required to elect between Counts 2 and 4, that there was error in submitting both these counts to the jury and that such error was not cured by the form of sentencing, that is, a sentence of five years on each count to run concurrently. Appellant relies upon the recent case of Milanovich v. United States, 1961, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773. There the petitioners, husband and wife, were both convicted of stealing government property in violation of 18 U.S.C.A. § 641. The wife was also convicted on a separate count for receiving and concealing part of the same property, in violation of the same section. Both were sentenced to imprisonment on the larceny conviction, the husband for five years and the wife for ten years. In addition, the wife received a five-year concurrent sentence on the receiving count. The Fourth Circuit Court of Appeals, 275 F.2d 716, relying on Heflin v. United States, 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407, set aside the sentence imposed on the wife for receiving. The Supreme Court, in reversing and remanding the case for a new trial, said, at page 555, 81 S.Ct. at page 730:

"Though setting aside the shorter concurrent sentence imposed upon the wife for receiving, the Court of Appeals left standing a ten-year prison term for larceny, double the punishment that had been imposed upon the husband for the identical offense. Yet there is no way of knowing whether a properly instructed jury would have found the wife guilty of larceny or of receiving (or, conceivably, of neither). Thus we cannot say that the mere

setting aside of the shorter concurrent sentence sufficed to cure any prejudice resulting from the trial judge's failure to instruct the jury properly. It may well be, as the Court of Appeals assumed, that the jury, if given the choice, would have rendered a verdict of guilty on the larceny count, and that the trial judge would have imposed the maximum ten-year sentence on that count alone. But for a reviewing court to make those assumptions is to usurp the functions of both the jury and the sentencing judge."

 While in the instant case the perjured testimony which is the subject matter of Count 2 and the perjured testimony which is the subject matter of Count 4 were given at separate times during the hearing before the grand jury, they do nevertheless relate to the single question of whether or not the appellant was in the jewelry store on or about March 20, 1958, and his denial thereof. The trial judge had serious doubts about the matter:

"Now, on the question of whether Counts Two and Four are duplicitous, I am not one hundred per cent convinced that they are not. I will undertake to take care of that in another fashion." (Whereupon he imposed equal and concurrent sentences on the two counts.)

The offense of perjury may not be compounded by the repetitious asking of the same question. True, the questions were asked at different times and in different contexts during the hearing. Nevertheless, we are constrained to hold that Counts 2 and 4 were duplicitous since they both involved the denial by the appellant that he had been in the jewelry store in Reno, Nevada, on or about March 20, 1958, and nothing more. However, we do not find Milanovich controlling nor applicable. Therein two unequal concurrent sentences of five and ten years respectively were imposed. The setting aside of the count with the lesser sentence by the Court of Appeals did not suffice, for, as the Supreme Court said in

that case, 365 U.S. at 555, 81 S.Ct. at page 730:

"* * * It is urged that since it is now impossible to say what verdict would have been returned by a jury so instructed, and thus impossible to know what sentence would have been imposed, a new trial is in order. This was the view of Chief Judge Sobeloff, dissenting in the Court of Appeals. 275 F.2d, at 721.

"We think that the point is well taken."

We have no such difficulty here. Counts 2 and 4 were substantially identical. There is no doubt that the jury would have returned a verdict of guilty on either one, had an election been made, in that they returned a verdict of guilty on both. The trial judge, recognizing the problem, attempted to clear it up by the imposition of equal and concurrent sentences. In so doing, he committed no reversible error. The rule is that a judgment of commitment may properly be affirmed if supported by a valid conviction upon one count, notwithstanding the fact that a like sentence was improperly imposed upon another count if the sentences were to be served concurrently. As stated in Hirabayashi v. United States, 1943, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774:

"* * * Since the sentences of three months each imposed by the district court on the two counts were ordered to run concurrently, it will be unnecessary to consider questions raised with respect to the first count if we find that the conviction on the second count, for violation of the curfew order, must be sustained. (320 U.S. at 85, 63 S.Ct. at page 1378.)

*　　*　　*　　*　　*

"The conviction under the second count is without constitutional infirmity. Hence we have no occasion to review the conviction on the first count since, as already stated, the sentences on the two counts are to run concurrently and conviction on the second is sufficient to sustain the

sentence." (320 U.S. at 105, 63 S.Ct. at page 1387.)

See also Lawn v. United States, 1958, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321; United States v. Sheridan, 1946, 329 U.S. 379, 381, 67 S.Ct. 332, 91 L.Ed. 359; Gorin v. United States, 1941, 312 U.S. 19, 33, 61 S.Ct. 429, 85 L.Ed. 488; Brooks v. United States, 1925, 267 U.S. 432, 441, 45 S.Ct. 345, 69 L.Ed. 699; Debs v. United States, 1919, 249 U.S. 211, 216, 39 S.Ct. 252, 63 L.Ed. 566. The situation in final effect here is not unlike that in Seymour v. United States, 8 Cir., 1935, 77 F.2d 577, 581, wherein this court stated:

"Another reason why this contention is unavailing is that there was but one sentence which was within what might have been imposed upon any one of the five counts upon which there was conviction. Powers v. United States, 223 U.S. 303, 312, 32 S.Ct. 281, 56 L.Ed. 448. The only prejudice alleged was in 'giving the jury the impression that he was charged with six separate perjuries, when in fact he had committed, if any, only one.' Actually, each count presented the charge of a separate perjury so that the jury received no false impression. If such impression had been erroneous, all possible harmful effect upon appellant was nullified by the sentence imposed",

and Sinclair v. United States, 1929, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692:

"The conviction on the first count must be affirmed. There were ten counts, demurrer was sustained as to four, *nolle prosequi* was entered in respect of two, and conviction was had on the first, fourth, fifth and ninth counts. As the sentence does not exceed the maximum authorized as punishment for the offense charged in the first count, we need not consider any other count." 279 U.S. at page 299, 49 S.Ct. at page 274.

■ The last claim of the appellant is that the admission of the testimony of Wolfe, Van Meter, Fleming and Kelly was prejudicially erroneous. The testimony of Victor Wolfe was to the effect that he had observed the appellant on three successive days in Reno, Nevada, in March, 1958. Clearly, this was relevant with reference to the charge contained in Count 1. Van Meter and Fleming testified as to flight records of United Airlines for March 21, 1958, which indicated that appellant and two other men had flown from Sacramento, California, to San Francisco, California. Witness Kelly's testimony went to the establishment of the fact that appellant and two other men had flown by TWA from San Francisco to Kansas City on March 21, 1958. We think no error was committed in receiving the testimony. Primarily, and as held by the trial court

"* * * It furnished a basis for concluding that the Grand Jury properly could be investigating the potential federal offense of transporting stolen property across state lines, and I think undoubtedly the evidence was material and that it was properly admitted, and that it tended to show the materiality of the statements and representations that were made to the Grand Jury in the course of their investigation."

True, the question of materiality was not one for determination by the jury. Nevertheless, a portion of the complained of testimony had to do with the charge contained in Count 3 of the indictment as to staying in the Senator Hotel in Sacramento, California, and as the balance of the testimony indicated that the appellant flew from Sacramento to San Francisco and then to Kansas City in one continuous flight the day following the robbery in Reno, Nevada, it thereby tended to corroborate the charges of appellant's having given perjured testimony. Even if a contrary view could be reached, it could amount to no more than harmless error and under Rule 52(a), Federal Rules of Criminal Procedure, 18 U.S.C.A., would be disregarded.

Affirmed.