561 P.2d 764

STATE of Arizona, Appellee,

v.

**Paul David LaBARRE, Appellant.**

**No. 1 CA–CR 1613.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 1, 1977.

Rehearing Denied March 8, 1977.

Review Denied March 22, 1977.

Conviction and sentence on one count vacated and sentences and convictions on remaining five counts affirmed.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, Chief Counsel, Crim. Div., Shirley H. Frondorf, Asst. Atty. Gen., Phoenix, for appellee.

Sorenson, Esser & Moore by Fred R. Esser, Phoenix, for appellant.

## OPINION

SCHROEDER, Presiding Judge.

Appellant appeals from his conviction and sentence to consecutive terms of not less than one nor more than 14 years on six counts of perjury arising from his testimony in a prior prosecution for robbery.[1] This

---

1. The appeal of the robbery conviction is pending. The eventual disposition of the underlying conviction, however, in no way affects the resolution of the issues presented here. *State v. Noble,* 2 Ariz.App. 532, 410 P.2d 489 (1966), and authorities cited therein.

Court has carefully reviewed the voluminous record. We find that two of the perjury counts involved answers to essentially the same question, and therefore vacate the conviction on one of those counts. We find not other reversible error and affirm the remaining convictions and sentences.

The issues raised by the appellant can be summarized as follows:

1. Whether defendant can properly be convicted of multiple counts of perjury arising from testimony in one trial. If so, were two of the counts so redundant as to result in double punishment?

2. whether defendant was denied his rights to speedy trial.

3. Whether the State improperly amended the information shortly before trial to substitute the exact day of commission of the alleged crime for the approximation contained in the original information.

4. Whether the trial court should have made inquiry of the jury members concerning allegedly prejudicial remarks made in their presence.

5. Was there fundamental error in connection with the admission and instructions to the jury on certain statements made by the defendant after the defendant had withdrawn any objection to the admission of the statements?

6. Does the State's failure to make certain disclosures to the defendant require reversal?

7. Should certain identification testimony have been suppressed?

8. Was testimony concerning a prior shooting improperly admitted?

9. Was there improper restriction of the defendant's right to cross-examine certain witnesses?

10. Was the sentence excessive?

11. Was there error in the court's refusal to give requested accomplice and credibility instructions?

12. Should a mistrial have been declared on the basis of certain remarks by the prosecutor?

13. Should the State have been collaterally estopped from charging the defendant with perjury?

## MULTIPLE COUNTS OF PERJURY

■ The defendant was charged and convicted on six counts of perjury arising from statements he made under oath during testimony in a prior trial. Appellant asks that we follow early decisions of courts in Georgia and Maine holding that when one takes an oath as a witness, violation of that oath can give rise to only one perjury even though the defendant may be guilty of several different falsehoods during the testimony. *Black v. State,* 13 Ga.App. 541, 79 S.E. 173 (1913); *Clackum v. State,* 55 Ga. App. 44, 189 S.E. 397 (1936); *State v. Shannon,* 136 Me. 127, 3 A.2d 899 (1939).

The Arizona perjury statute, A.R.S. § 13–561, makes the gravamen of the offense the making of a false "material statement under oath. . . ." The offense is not merely the violation of the oath. Our statute is the model act on perjury § 1, 9B Uniform Laws Annotated (1966), which is patterned after the federal statute, 18 U.S.C. § 1621. The leading federal case discussing the very question raised by appellant here is *Seymour v. United States,* 77 F.2d 577 (8th Cir. 1935), which squarely held that "the commission of perjury as to one matter does not absolve the witness or afford him immunity as to all other matters covered by his testimony at the same hearing." *See also United States v. Tyrone,* 451 F.2d 16 (9th Cir. 1971), cert. denied, 405 U.S. 1075, 92 S.Ct. 1494, 31 L.Ed.2d 808.

Although the "one oath, one perjury" theory has never expressly been confronted in Arizona, our courts have upheld multiple counts of perjury stemming from a single oath. *See State v. Cousins,* 4 Ariz.App. 318, 420 P.2d 185 (1966); *State v. Nobel,* 2 Ariz. App. 532, 410 P.2d 489 (1966). Accordingly, we reject appellant's contention that the violation of an oath by separate and distinct material false statements can give rise to only one charge of perjury.

■ The State recognizes, however, that in order to give rise to multiple counts of perjury, there must in fact be "distinct, separate, and material offenses." *United States v. Cason*, 39 F. Supp. 731 (D.La. 1941). *See also Masinia v. United States,* 296 F.2d 871 (8th Cir. 1961). The state acknowledges that the offense of perjury cannot be compounded by the repetition of the same question.

■ We then must determine whether the six counts of perjury in this case were in fact based upon separate and distinct statements. We find that four of the counts, Counts Three through Six, do constitute statements in response to four separate and distinct questions. Count Three was a denial of knowledge concerning a money belt. Appellant protests that the denial was ambiguous, but in full context, we find no ambiguity.[2] Court Four was a denial of having been given a description of the residence. Count Five related to a denial of any discussion about the residence, and Count Six was a denial of a phone call to anyone admitting participation in the robbery and possession of certain photos taken from the house.

However, Counts One and Two are not so distinguishable. The question in each is virtually the same, *i. e.,* whether the appellant was one of the robbers. The answer to each, although in slightly different form was a denial.[3] In *Masinia, supra,* the court considered it improper to charge two counts of perjury based on two denials that the defendant had been in the robbed jewelry store. We conclude that Counts One and Two in this case are similarly duplicitous.

Therefore, the conviction and sentence under one of these counts must be vacated.

## SPEEDY TRIAL

■ Appellant was brought to trial 185 days after his initial appearance. Rule 8.2, Arizona Rules of Criminal Procedure, requires that a defendant who is not in custody must be tried within 120 days from the date of initial appearance or 90 days from the date of arraignment, whichever is the lesser. Appellant had been ordered released from custody on this charge, although he remained imprisoned on a prior conviction. The 120-day period from the date of the first appearance applies.

In computing the time limitations, certain periods are permitted to be excluded under the provisions of Rule 8.4. The question here then becomes whether, taking into account time limitation periods properly excludable, the defendant was tried within the 120-day limitation.

There were numerous continuances in the case, and some, including one to accommodate the vacation schedules of certain court personnel who were to appear as witnesses, are highly questionable as excluded periods. However, our review shows that at least 75 days of delay were properly excludable; the defendant was, therefore, tried within the 120-day period, and his right to speedy trial under this rule and the Constitution were not violated.

The excludable time is summarized as follows:

(a) Nineteen days, from April 17 through May 6, 1975, representing a continuance of the preliminary hearing in order to permit a

---

**2.** "Q. were you ever told by anyone, prior to the robbery, that Phillips carried six one thousand dollar bills in a money belt?
  "A. The only thing I know about a money belt is what was mentioned in court?
  "Q. Is the answer to that question, no?
  "A. Yes, no."

**3.** The dialogue which provides the basis for Count One is as follows:
  "Q. Now, you have heard Donna Brown identify you, at least on the night of the shooting, anyway, as having been involved in the armed robbery. Did you participate?—were

you one of the people in her house on the night of the robbery?
  "A. No, I didn't know anything about the robbery when it happened."
  The dialogue supporting Count Two is:
  "Q. And you, also under oath at this time deny you were one of the robbers or in the house of Donna Brown and James Phillips, on the 26th day of August, 1974?
  "A. I didn't rob them."

defense special action to remove the county attorney's office from the case because of an alleged conflict arising out of the prior robbery conviction. While it is not clear from this record whether the appellant participated in the special action itself, or whether it was prosecuted solely by a co-defendant, it is clear that the appellant did join in the motion before the trial court to remove the county attorney, and he also participated in the trial court hearing intended as a record for the special action. Appellant did not object to the continuance. We believe that this delay is one "occasioned by or on behalf of the defendant" so as to come within the provisions of Rule 8.4(a). *See State ex rel. Berger v. Superior Court,* 111 Ariz. 335, 529 P.2d 686 (1974), holding the time attributable to defendant's request for a change of judge excludable.

(b) A delay of three days, from July 22 to July 25, 1975 occasioned by the absence of both defendant and his counsel at the time set for trial. The trial court found extraordinary circumstances to be present within the meaning of Rule 8.5, Arizona Rule of Criminal Procedure, and appellant does not specifically challenge the exclusion of this period.

(c) A delay of 25 days, from August 14 to September 8, 1975 on defense counsel's motion for a continuance because of a conflicting trial. Appellant correctly points out that the court did not make an express finding of extraordinary circumstances, but we believe that the delay was one occasioned by or on behalf of the defendant so as to be excludable within the provisions of Rule 8.4(a), particularly since counsel informed the judge that the requested continuance would not violate any rule. *See State v. Armenta,* 25 Ariz.App. 62, 540 P.2d 1281 (1975).

Appellant contends that this continuance was granted over the appellant's own wishes, and also faults defense counsel for failing diligently to pursue withdrawal from the case because of conflict. Although the record reflects that at an earlier time, the defendant had voiced a desire to go to trial promptly when a different continuance was under consideration, the record here does not reflect the appellant's wishes differed from that of his counsel at the time this continuance was granted. Moreover, we cannot fault defense counsel's pursuit of the conflict problem, for a motion to withdraw had previously been made and denied, and the motion shortly thereafter was renewed and granted by a different trial judge.

(d) Continuances totaling 28 days granted by the presiding judge upon express determinations of extraordinary circumstances. One continuance, from September 8 to September 30, 1975, was occasioned by the request of the county attorney to withdraw because of a possible conflict. The other continuance, representing the six days between September 30 and October 6, 1975, was prompted by hospitalization of a material witness for the State. We find no abuse of discretion in the granting of either of these continuances.

## AMENDMENT OF THE INFORMATION

The information with respect to four of the counts originally alleged that the perjury had been committed "on or about March 25th, 1975." Three days before the trial, the information was amended, upon the State's motion, to read "March 26, 1975." Appellant argues that the amendment was improper because the State could and should have amended the information earlier.

The amendment was no more than a specification of the precise date, and did not in any way conflict with the original information. The appellant has not claimed any prejudice as a result of the amendment, and since the substance of the charges all dealt with testimony given at a time which is a matter of public record, it is inconceivable that there was such prejudice. Rule 13.5 permits formal amendment to the charging document, and this amendment was no more than that. We find no error. *See State v. Williams,* 108 Ariz. 382, 499 P.2d 97 (1972); *State v. Jonas,* 26 Ariz.App. 379, 548 P.2d 1191 (1976).

## FAILURE TO QUESTION THE JURY ON CONVERSATION CONDUCTED IN FRONT OF THE JURY

During a recess in the selection of the jury, a deputy sheriff assigned to the case engaged in a conversation with the trial judge and a court employee while several jurors were still in the room. The record shows that the deputy sheriff, speaking of a previous defendant in that court, stated that "he . . . can be a little dingy" and "would run like a rabbit, except when he was afraid he would get shot". The record does not indicate that the statements were actually heard by any of the jurors or that it influenced their views as to this defendant. It was overheard, however, by defense counsel who moved for a mistrial. After an evidentiary hearing, that motion was denied, and we cannot say that in the absence of any showing of influence on the jury, the denial was improper. *See State v. Ebert,* 110 Ariz. 408, 519 P.2d 1149 (1974).

Appellant contends, however, that the trial court should have made inquiry of the jurors to determine whether they heard the comments, whether they linked them to the defendant, and whether the comments had any improper influence on the jurors. While in some situations the trial court's failure to make such an inquiry might be considered reversible error, here the trial court specifically asked defendant's counsel whether he wished to have an inquiry made of the jurors, and defense counsel indicated that he did not, stating "no amount of inquiry the court could make" could insure a fair trial. The appellant argues that this does not constitute a waiver of a jury polling on the ground that later in the trial, defense counsel renewed the motion for mistrial and indicated that he was under the impression that he had earlier made a request for "some sort of hearing." In view of the dearth of any record showing any prejudice, the fact that a hearing was held, and the position taken by defense counsel with respect to polling the jury at the time that the alleged impropriety occurred, we hold that the trial court committed no error in failing to pursue the matter further.

## FAILURE TO INSTRUCT ON VOLUNTARINESS OF EXCULPATORY STATEMENTS

The appellant had made certain statements to police officers, and the statements were the subject of a voluntariness hearing prior to trial. The court found that all the statements were voluntary. During the course of the trial, only one statement was utilized by the State, and that statement was exculpatory in nature. It indicated that the defendant knew about the robbery but had not participated in it. Prior to the admission of that statement, the court held a conference at the bench and appellant's counsel stated that he had no objection to the admission of that particular statement. Appellant asked for no instruction that the jury determine whether the statement was voluntary.

Appellant nevertheless claims that the court committed fundamental error in failing to give such an instruction. It is not at all clear, however, that, given the exculpatory nature of the statement, such an instruction would have been to the advantage of the appellant. Moreover, all of the statements had been determined by the court to have been voluntary, the defense offered no testimony tending to show that the statement was involuntary, and the defense in fact waived any objection to the admission of the testimony. We, therefore, conclude that this case comes within the holding of *State v. Cobb,* 2 Ariz.App. 71, 406 P.2d 421 (1965), that where there is no issue of voluntariness, and no instruction on voluntariness is offered by the defendant, the court does not err in failing to give such an instruction. *See also State v. Vaughn,* 104 Ariz. 240, 450 P.2d 698 (1969).

## ALLEGED PREJUDICIAL FAILURE OF THE STATE TO MAKE DISCLOSURE

Appellant complains of three instances in which the State allegedly failed to make timely disclosure of discovery materials pursuant to *Brady v. Maryland,* 373 U.S. 83,

83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and Rule 15, Arizona Rules of Criminal Procedure. The allegedly discoverable items complained of are:

(a) Materials relating to police surveillance of the appellant in connection with the prior robbery charge. A written request for *Brady* materials, specifically referring to the possibility of police surveillance, was made prior to trial, and an oral request was made at the pretrial again specifically referring to surveillance materials. Counsel for the State at that time indicated there were no surveillance records. At a later hearing, appellant's counsel again raised the surveillance question, indicating he had specific knowledge of surveillance by some police officers; the court ordered the prosecution to produce any surveillance records. No records were produced. During the trial, a police officer testified that there had been off and on surveillance of the appellant's home, but that nothing in that surveillance showed anything regarding the appellant's involvement in the robbery or anything exculpatory in connection with the robbery. A custodian of records for the police department testified that he had no surveillance records in his possession.

(b) Tapes of conversations between police and the appellant. Such tapes were alluded to during the voluntariness hearing. The court ordered the production of the tapes. The following morning, they were turned over to defense counsel. Defense counsel apparently listened to the tapes, and before the conclusion of the trial moved for a mistrial because the tapes were unintelligible.

(c) A tape recording of a statement by Nadine Bell, one of the State's key witnesses. Defense counsel did not learn of the existence of the tape until the time of trial when the witness herself indicated that a tape had been made. The court then ordered the tapes to be produced, and permitted counsel the opportunity to listen to them before completing cross-examination of the witness. The record contains no further indication of what the tapes contained, and in fact no mention was made of them during the cross-examination.

■ *Brady v. Maryland, supra,* holds that the State may not withhold evidence favorable to the accused when requested to produce it. But as emphasized in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the nondisclosed evidence must be material to the case:

> "We do not, however, automatically require a new trial whenever 'a combing of the prosecutors' files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . .' . . . A finding of materiality of the evidence is required under Brady . . . ." (405 U.S. at 154, 92 S.Ct. at 766, 31 L.Ed.2d at 108).

Rule 15.1, Arizona Rules of Criminal Procedure, is broader, and does require production of certain surveillance information and production of written or recorded statements of prosecution witnesses. However, the sanctions to be imposed for violation of those rules are highly discretionary with the trial court. See Rule 15.7.

■ There is no showing in this case of prejudicial suppression of evidence which would aid the defense. At best, the appellant suggests that some of the surveillance information may have tended to show that the defendant did not meet with one of the State's witnesses at the time the witness testified he did. However, this remains pure speculation. We do not approve of the State's conduct with respect to the discovery in this case, particularly with respect to the surveillance materials, but we cannot hold that the court was constitutionally required to declare a mistrial, nor can we say that its failure to do so was an abuse of discretion under our rules. *State v. Miller,* 112 Ariz. 95, 537 P.2d 965 (1975); *State v. Wilder,* 22 Ariz.App. 541, 529 P.2d 253 (1974), cert. denied, 423 U.S. 843, 96 S.Ct. 78, 46 L.Ed.2d 64. We find no reversible error.

## SUPPRESSION OF IN–COURT IDENTIFICATIONS

Two witnesses made in-court identifications of the defendant after there were hearings in which the trial court determined that the identifications were not tainted by police pre-trial procedures. *See State v. Dessureault,* 104 Ariz. 380, 453 P.2d 951 (1969), cert. denied, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257. Appellant claims error with respect to each.

■ The first witness was a victim of the robbery. The record reflects that following the robbery, she was contacted in an attempt to extort money in exchange for the return of certain pictures taken during the robbery. ·She observed the person who appeared at the time and place designated for the exchange, and subsequently recognized the appellant in a hospital waiting room in a chance meeting. Immediately after the robbery, she had been shown a photograph of the appellant, but was not able to identify him. The in-court identification of the defendant came after personal confrontation during the robbery, at the extortion rendezvous, and the meeting in the hospital. None of these confrontations was engineered by the police, and we see no basis for holding that the in-court identification was tainted by prior police activities leading to undue suggestiveness.

■ The second witness identified the appellant as a person who had made statements to her concerning the robbery. This witness, although not an eye witness to the robbery, knew the defendant personally as "Dave", had met with him several times, and identified him in court as Dave. The police had shown her a single photograph of the appellant and no one else, and she had identified the photograph. However, in view of her prior relationship with the appellant, the evidence is clear and convincing that the in-court identification was independent of any pre-trial identification procedures. *State v. Dessureault, supra; State v. Bojorquez,* 111 Ariz. 549, 535 P.2d 6 (1975).

## EVIDENCE OF PRIOR BAD ACTS IN CONNECTION WITH THE SHOOTING AND EXTORTION ATTEMPT

■ The victim of the robbery, Donna Brown, had met the appellant in a parking lot monitored by police. The plan had been that in exchange for $1500, the appellant would return certain photographs of Donna Brown which had been taken in the robbery. Donna Brown was armed with a gun and during the meeting was shot by her own weapon.

Appellant moved for suppression of evidence relating to the shooting, and the motion was denied. It is not clear whether appellant's claim here is that evidence of the shooting itself should have been suppressed, or whether both the shooting and the extortion attempt should have been suppressed as prejudicial. In any event, the events of the evening appear to be inextricably intertwined with other evidence concerning perjury. While evidence of prior bad acts or unrelated events are normally excluded, the events here were admitted as part of the evidence linking the defendant to the robbery, and as part of the foundation for Donna Brown's identification of the appellant. We believe that they were admissible for those purposes; we have carefully reviewed the testimony relating to those events and conclude that the incident was not unduly emphasized. There was no abuse of the trial court's discretion. *See State v. Fierro,* 107 Ariz. 479, 489 P.2d 713 (1971).

## ALLEGED RESTRICTION OF DEFENSE CROSS–EXAMINATION

■ Appellant claims that there was undue limitation of his right to cross-examine a key prosecution witness, Nadine Bell, concerning immunity which may have been granted her. We have examined the record of her testimony, and find that there was a full cross-examination, the fact of immunity was clearly spelled out to the jury, and appellant took full advantage of that fact in arguing to the jury concerning her credibility. We find no error.

## EXCESSIVE SENTENCE

Appellant argues that the sentence on several counts of perjury in this case, when coupled with the prior sentence on the robbery conviction, is excessive. The principal complaint appears to be that the State showed improper vindictiveness in bringing the perjury counts immediately after the robbery conviction.

As we have previously discussed, multiple charges of perjury based on the separate false statements are appropriate under our statute, and five of the counts here were proper. The sentence imposed was within the discretion of the trial court, and we cannot say that it was abused. To the extent that the appellant argues vindictiveness of the prosecutor, we believe that the contentions are adequately disposed of by this Court's recent discussion in *State v. Gallegos*, 27 Ariz.App. 538, 556 P.2d 1141 (filed November 23, 1976).

## THE NEED FOR AN ACCOMPLICE INSTRUCTION

Four of the perjury counts related to allegedly false testimony concerning conversations the defendant had with Nadine Bell. Bell arguably was an accomplice in the robbery, and had been granted immunity. Appellant claims that an accomplice instruction pursuant to the provisions of A.R.S. § 13–136 then in effect should have been given requiring corroboration of her testimony. We disagree. Bell was not an accomplice in the crime of perjury. She was in no way involved in the appellant's making of the statements forming the basis for the charges. An accomplice instruction was not required and would have made little sense in the context of the perjury charges. Appellant had and took advantage of ample opportunity to attack the credibility of Bell.

Appellant also contends that the court improperly refused to give a standard credibility of witness instruction. The ground for the court's refusal was that another instruction covering credibility of witnesses was given, and the instruction would have been redundant. We find no error.

## ALLEGEDLY IMPROPER PROSECUTORIAL REMARKS

The trial court had ordered the State to refrain from making any reference to the verdict in the prior robbery trial. During closing argument, the prosecutor stated:

"Again, he got on the stand and said, 'I didn't rob them.' He did that, of course, in an effort to get himself acquitted in the robbery trial. His motive is clear for perjuring himself.

"When you judge why a defendant did a particular thing, you can consider what motive he may have had for doing it.

"And, in this case, it's clear, the motive for committing perjury was an attempted acquittal of the armed robbery. But, that doesn't excuse it."

An objection and motion for mistrial were made and refused.

Appellant here is apparently contending that the remark of the prosecutor improperly left the impression with the jury that the defendant had been acquitted of the robbery charge, and that such a notion would make the jury more likely to convict on the perjury charges. We need not speculate as to whether the comment did tend to have that effect. The comment itself related not to the substance of the verdict, but to the defendant's motivation for giving the allegedly perjured testimony, and we see no abuse of discretion by the court in denying the motion for mistrial.

## COLLATERAL ESTOPPEL

Finally, appellant argues that the State was estopped to try him for perjury because he had already been convicted of the robbery. The contention appears to be that this trial resulted in the defendant's being prosecuted by use of the testimony of the same witnesses who testified in the robbery trial, and that the effect is somehow the same as double jeopardy. Appellant cites no authority for his position. Clearly the crime of perjury is not the same

as the crime of robbery, and the acts underlying the perjury charges, namely the giving of false testimony, were not the same as acts underlying the robbery charge. We perceive no valid reason for insulating the defendant from the criminal consequences of perjured testimony.

The conviction and sentence on Count Two is vacated, and the sentences and convictions on the remaining five counts are affirmed.

WREN and EUBANK, JJ., concur.