COMMONWEALTH vs. ALLAN M. GURNEY.

Suffolk. January 8, 1982. — April 2, 1982.

Present: GRANT, GREANEY, & DREBEN, JJ.

*Perjury. Practice, Criminal,* Grand jury proceedings, Discovery, Duplicitous convictions, Finding of guilty. *Evidence,* Recent invention.

Review of cases in which the Federal courts and State courts outside Massachusetts have addressed the problem of multiple convictions in the context of perjury. [395-399]

Where a defendant was convicted under G. L. c. 268, § 1, on a four-count indictment, of giving perjured testimony before a grand jury in response to a series of questions by the prosecutor directed at various overlapping periods of time, and where each count involved a new lie about a period which was separate and distinct from the others, double jeopardy principles involving lesser included offenses under the "same evidence" test were not applicable and the defendant was properly convicted of the four perjuries which were neither substantially identical nor a result of improper fragmentation of a single offense by the prosecutor's choice of questions. [400-405]

At a trial for perjury, there was no merit to the claim that the trial judge should have excluded certain testimony on the ground that it was recently fabricated and that without such testimony there was no evidence that the defendant's perjury was wilful and intentional. [405-406]

In the circumstances, a defendant in a criminal case failed to show that he was prejudiced by any failure of the Commonwealth to make timely disclosure of its investigator's reports in violation of a pretrial conference agreement. [406-407]

At a criminal trial, there was no merit to the defendant's argument that the thirteen days which elapsed between the end of the trial and the formal entry of the guilty findings manifested that the judge harbored uncertainty inconsistent with findings of guilt beyond a reasonable doubt. [407]

INDICTMENT found and returned in the Superior Court Department on May 14, 1979.

The case was heard by *O'Neil, J.*

*Thomas J. Keaney*, Assistant Attorney General, for the Commonwealth.

*Kevin M. Glynn* for the defendant, submitted a brief.

GREANEY, J. The defendant was charged, in a four-count indictment, with giving perjured testimony before a grand jury. G. L. c. 268, § 1. He waived trial by jury and, after a bench trial in the Superior Court, was found guilty on all counts. On each count, he was sentenced to a one-year term in a house of correction, the terms to run concurrently and with the sentences suspended and probation imposed for one year.

On appeal, the defendant argues four claims of error, only one of which has substantial merit. That argument presents the question whether the defendant has been subjected to multiple punishment[1] in violation of the double jeopardy clause. Specifically, the defendant argues that the four statements charged as separate perjuries so overlapped in content as to bar conviction on all four counts.

The facts are not in dispute. In November, 1978, a special grand jury was convened to investigate allegations of fraud by parties providing services to the Medicaid program of the Department of Public Welfare (Department). One provider under investigation was Bay State Management Company, Inc. (Bay State), which owned and operated eight long term care facilities in Massachusetts, including the Quincy Nursing Home (Quincy). Since at least 1969, Quincy had paid wages to one Emma Boynton as a kitchen employee. The grand jury had information, however, that Boynton did not actually work at Quincy for a number of years when she was on its payroll. Rather, it was alleged that she worked during those years at the personal residence of one Michael Minkin, a director of Bay State.

---

[1] The defendant's argument does not focus on the penalties imposed, but on the convictions themselves. The defendant correctly points out that under recent case law multiple convictions will themselves constitute multiple punishment if they involve what amounts to the same offense. He also correctly points out that the imposition of concurrent sentences no longer cures a multiple punishment problem. *Commonwealth* v. *Jones*, 382 Mass. 387, 395-397 (1981).

The vice of this arrangement arises from the fact that Quincy was being reimbursed by the Department for wages paid to its employees. Under regulations of the Rate Setting Commission (Commission), a nursing home providing services for Medicaid is required to file an annual financial report on a form denominated RSC-1. 114.2 Code Mass. Regs. § 2.03 (1978). The Commission uses these reports to determine the rate at which the nursing home will be reimbursed by the Department. See generally *Commonwealth v. Cerveny*, 373 Mass. 345, 348-349 (1977). Although several factors enter into the calculation, that rate is largely determined by the operating expenses, including wages, reported by the nursing home each year. 114.2 Code Mass. Regs. § 2.06(1) (1978). These expenses are apparently reimbursed on a dollar for dollar basis in most instances.

Commission regulations, however, forbid reimbursement of any "[e]xpenses which are not directly related to the provision of patient care." 114.2 Code Mass. Regs. § 2.06(5)(f) (1978). Thus, if Emma Boynton did not actually work at Quincy for a number of years when she was paid as an employee, the expenses reported by Quincy, and consequently the payments made by the Department, would have been improperly inflated for those years. If established, these facts would have been grounds for initiating prosecutions under G. L. c. 266, § 30(1) (larceny by false pretense), G. L. c. 268, § 1A (perjury by written instrument), and G. L. c. 6A, § 35 (falsifying information required to be filed with the Commission). See *Commonwealth* v. *Cerveny*, *supra* at 346-347 & nn.2-4.

On April 10, 1979, the defendant, accompanied by counsel, appeared before the grand jury. He first testified that he had worked at Quincy since May, 1971, that he was head chef and kitchen supervisor, and that he scheduled the hours which Emma Boynton worked. The assistant attorney general (prosecutor) then asked the defendant a series of questions directed at various periods of Boynton's employment. In substance, the defendant was asked whether Boynton worked at Quincy:

(1) from January 1 through December 31, 1972;

(2) from January 1 through December 31, 1973;[2]

(3) from January 1, 1972, through December 31, 1975;[3]

(4) from May, 1971, through the present (i.e., April 10, 1979).[4] The defendant answered each question in the affirmative. Each numbered response formed the basis for the perjury charged in the count similarly numbered in the indictment.

At trial, the defendant stipulated that the prosecutor's questions were material to the grand jury's investigation. See, e.g., *Commonwealth* v. *Borans*, 379 Mass. 117, 135-137 (1979). The defendant also stipulated that the preliminary elements required to prove perjury were present. See *Commonwealth* v. *Geromini*, 357 Mass. 61, 63-64 (1970). The case was tried on the issues whether the four statements were false, and whether any falsity was wilful and intentional. The defendant does not question the sufficiency of the Commonwealth's proof on those elements.[5]

---

[2] Following question 2 above, the prosecutor also asked whether Boynton worked at Quincy (a) from January 1 through December 31, 1974, and (b) from January 1 through December 31, 1975. The defendant answered these questions in the affirmative, but the Commonwealth apparently chose not to charge additional perjury counts based on those responses.

[3] Questions 1-3 above, as well as the questions mentioned in note 2, were all asked in identical form. As to each period, the prosecutor asked, "[D]id Emma Boynton work full time every week, all week, in the Quincy Nursing Home excluding vacation and sick time?" These five questions were asked consecutively during the middle portion of the defendant's testimony.

[4] Question 4 was the prosecutor's final question to the defendant. It was asked in a form slightly different from the others, beginning "And are you indicating to the grand jury that . . . ?"

[5] Our own review of the transcript reveals that the Commonwealth conceded that Boynton returned to work at Quincy on February 14, 1976. Thus, there was no evidence that the statement charged in count 4 was false as to the portion running from that date to April 10, 1979. The Commonwealth did, however, present evidence which supported a finding of falsity as to the remainder of count 4, including the portions which do not overlap with any other count (i.e., May — December, 1971, and January 1 — February 13, 1976). Although the defendant moved below

1. The defendant's principal argument is that the convictions on all four counts are flawed on the ground of multiplicity.[6]  This argument proceeds on the view that the substance of the perjuries charged in counts 1 and 2 are included within count 3, and the substance of counts 1, 2 and 3 are included within count 4.  Because of this, the defendant urges that the convictions on three of the counts should be vacated, leaving one conviction on either count 3 or count 4.

We have found no Massachusetts case which addresses the problem of multiple punishments in the context of perjury.  There is considerable case law elsewhere, both Federal and State.  Proper analysis of the case calls for a review of those decisions first, followed by discussion of the parties' contentions seeking (improperly in our opinion) to apply jeopardy principles involving lesser included offenses under the "same evidence" test.  We then look to the statute itself to determine whether it was the Legislature's intent to allow separate convictions for the perjuries here (concluding that it was and that the prosecutor's choice of questions did

---

for a required finding of not guilty, Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), he does not challenge the denial of that motion on appeal, Mass.R.A.P. 16(a)(4), 367 Mass. 921 (1975).  Therefore, we need only assume, without deciding, that the finding of guilt on count 4 was proper because the evidence showed at least a portion of the statement charged to be false.  See *Commonwealth* v. *Gale*, 317 Mass. 274, 276 (1944), and cases cited.

Similarly, the defendant does not suggest that the guilty findings on counts 3 and 4 were based on the portions of those counts which are the same as the other counts, rather than the portions which are different.  The trial judge was acutely aware of the problem potentially posed by the overlapping periods in the four counts.  There was also evidence which supported findings of guilt on the portions of counts 3 and 4 which are distinct.  On these facts, and in a case not decided by a jury, we assume in support of the findings that the trial judge "correctly instructed himself" on the law, absent a showing to the contrary (*Commonwealth* v. *Beaulieu*, 3 Mass. App. Ct. 786, 787 [1975]; see *Cummings* v. *National Shawmut Bank*, 284 Mass. 563, 568 [1933]), and based the convictions on counts 3 and 4 on the portions of those counts which are distinct from counts 1 and 2, and from each other.

[6] The defendant also argues that the Commonwealth should have been forced to elect between the counts prior to trial.  His motion to compel an "election" was properly denied for the reasons discussed in paragraph 3 of note 9 hereafter.

not result in improper fragmentation of the offenses). We conclude that, since each count involves a lie about a period of time which is separate and distinct, the four perjuries are not substantially identical and the convictions can stand.

A. *Cases on Multiplicity of Perjury Convictions.*

The defendant relies on the leading case of *Gebhard* v. *United States*, 422 F.2d 281 (9th Cir. 1970), which states the prevailing view as follows: "If [the defendant] in fact told separate lies, each of which could have hindered the grand jury in its investigation, then he could properly be separately charged for each lie. On the other hand, we do not think it proper that the government bludgeon a witness who is lying by repeating and rephrasing the same question, thus creating more possible perjury counts . . . . [By so doing,] a prosecutor could run up a possible perjury sentence indefinitely merely by repeating the same question. Single punishment for a single lie should suffice." *Id.* at 289-290.

The Commonwealth concedes that "[t]he offense of perjury may not be compounded by the repetitious asking of the same question." *Masinia* v. *United States*, 296 F.2d 871, 880 (8th Cir. 1961). See also *Brown* v. *Ohio*, 432 U.S. 161, 169 (1977); *Commonwealth* v. *Winter*, 9 Mass. App. Ct. 512, 526 (1980). It maintains, however, that the four convictions are not based on the same perjury, as the defendant's answer to each successive question involved a new lie about a different period of Boynton's employment. In this view, the defendant told four "separate and distinct lies," and "the proof of each falsehood required the establishment of different facts." *United States* v. *Nixon*, 634 F.2d 306, 313 (5th Cir. 1981). For that reason, it is argued, "each answer constituted a separate incident of perjury." *United States* v. *Masters*, 484 F.2d 1251, 1253 (10th Cir. 1973).

As to the overlapping portions of the periods charged, the Commonwealth relies on *United States* v. *Doulin*, 538 F.2d 466, 471 (2d Cir.), cert. denied, 429 U.S. 895 (1976), which viewed a similar circumstance as follows: "In situations such as this where the grand jury is focusing its attention

upon a series of related acts occurring over a period of time, it is inevitable that its questions will overlap to a certain degree. [See *Bursey* v. *United States*, 466 F.2d 1059, 1079 (9th Cir. 1972) (some repetition inevitable, even desirable, if not excessive).] But such overlapping alone is not enough to require that the allegedly false responses of the witness be consolidated into a single perjury count where, as here, each of the critical inquiries was directed to a separate facet of the overall transaction being investigated."

Based on these and other cases, the rule which emerges is a strict one. As a practical matter, it appears that individual lies will only constitute the same perjury, thereby barring multiple convictions, where they involve facts which are "substantially identical." *Masinia* v. *United States, supra.* Likewise, close analysis reveals that multiple convictions will be allowed to stand even where the factual difference between the perjuries is slight. In sum, it appears from these cases that convictions for perjury will only be held reversible on the ground of multiplicity where individual falsehoods are "so related . . . [in] subject-matter . . . [and] so linked and blended together in point of time, as to constitute but one act or transaction, and therefore constitute but one offense." *Commonwealth* v. *Davenport*, 255 Pa. Super. Ct. 131, 146 (1978), quoting *State* v. *Anderson*, 35 Utah 496, 503 (1909).

The application of these principles is best illustrated in decisions which vacate one or more convictions on the ground of multiplicity while affirming others as involving distinct perjuries. These cases are set out in the margin.[7] It is signifi-

---

[7] See *Masinia* v. *United States, supra* (affirming two convictions for statements to grand jury investigating robbery that defendant was not present (1) in Reno, Nevada, in March, 1958, and (2) in jewelry store in Reno on March 20, 1958; but striking conviction for repetition of second denial); *People* v. *Guppy*, 30 Ill. App. 3d 489, 494-495 (1975) (affirming three convictions for statements to grand jury investigating robbery that defendant did not see an unusual amount of money in her home (1) on evening of February 9, 1973, (2) during the month of February, 1973, and (3) ever at any time; but striking convictions for additional denials regarding first two periods); *United States* v. *Lazaros*, 480 F.2d 174, 179

cant that the majority of cases find no multiplicity among the convictions.[8]   While none of these decisions is dispositive

(6th Cir. 1973), cert. denied, 415 U.S. 914 (1974) (affirming four convictions for statements to grand jury investigating bribery that defendant gave money at party (1) to A, (2) to B, (3) to C, and (4) to D; but striking convictions for additional statements that A, B, C and D (5) were all present at party, and (6) were all present from start to finish); *United States* v. *Williams*, 552 F.2d 226, 228-229 (8th Cir. 1977) (affirming two convictions for statements to grand jury investigating fraud that defendant (1) never took money for his own use in exchange for releasing hospital's liens, and (2) never solicited cash contributions to office fund for releasing liens; but striking conviction for additional statement that defendant did not get any cash for compromising liens); *Gebhard* v. *United States, supra* (affirming three convictions for statements to grand jury investigating gambling that defendant (1) did not know that gambler used electronic devices to cheat in card games, (2) did not furnish electronic equipment to nightclub, and (3) did not receive transmitter from gambler for repair; but striking convictions for additional denials on each topic).   For other cases vacating perjury convictions on the ground of multiplicity, see *State* v. *LaBarre*, 114 Ariz. 440, 442-443 (Ct. App. 1977); *Commonwealth* v. *Davenport, supra* at 144-146.   Cf. *United States* v. *Dudley*, 581 F.2d 1193, 1198 (5th Cir. 1978).

[8] See *United States* v. *Tyrone*, 451 F.2d 16, 18 (9th Cir. 1971), cert. denied, 405 U.S. 1075 (1972) (affirming two convictions for statements to grand jury denying that defendant discussed (1) cost of union loan to resort developer, and (2) condition of same loan); *United States* v. *Andrews*, 370 F. Supp. 365, 369 (D. Conn. 1974) (affirming two convictions for statements to grand jury denying that defendant (1) participated in bookmaking operation during specified period, and (2) settled gambling accounts at his home during same period); *United States* v. *Masters*, 484 F.2d at 1252-1253 (affirming convictions for statements at evidentiary hearing denying that defendant (1) had ever previously been in any court, (2) had ever been convicted or sentenced for any particular offense in Southern District of Iowa, and (3) had ever been imprisoned in Iowa State Penitentiary); *United States* v. *Cason*, 39 F. Supp. 731, 734-735 (W.D. La. 1941) (affirming two convictions for statements to grand jury denying that defendant (1) instructed employees of central government office to solicit subscriptions to political publication, and (2) instructed central employees to give same instruction to branch employees); *Seymour* v. *United States*, 77 F.2d 577, 581 (8th Cir. 1935) (affirming two convictions for statements to Senate subcommittee denying that defendant had (1) personal knowledge of money available for political campaign, and (2) knowledge of contributions to campaign).   For other cases affirming all convictions over claims of multiplicity, see *Richards* v. *United States*, 408 F.2d 884, 884 (5th Cir.), cert. denied, 395 U.S. 986 (1969); *United States* v. *Doulin, supra*; *United States* v. *Gulino*, 588 F.2d 256, 258 (9th Cir.

of this case,[9] the general principles stressed therein are not supportive of the defendant's position on the present facts.

---

1978); *United States* v. *Nixon,* 634 F.2d at 313; *United States* v. *De La Torre,* 634 F.2d 792, 794-795 (5th Cir. 1981); *United States* v. *Hubbard,* 474 F. Supp. 90, 98-99 (D.D.C. 1979); *DiLorenzo* v. *Murtagh,* 36 N.Y.2d 306, 310-312 (1975). Cf. *United States* v. *Berardi,* 629 F.2d 723, 729 (2d Cir.), cert. denied, 449 U.S. 995 (1980).

[9] We note that the analysis employed in the cases cited in notes 7 and 8, *supra,* is not consistent throughout. We therefore emphasize that the proper focus of the inquiry under Massachusetts law is not on the prosecutor's questioning before the grand jury, or on his choice of counts in framing the indictment, but rather on the multiplicity of the defendant's convictions.

Given the "ancient and important public function" of the grand jury as an investigative body, *Matter of Pappas,* 358 Mass. 604, 613-614 (1971), aff'd, 408 U.S. 665 (1972); see *Lataille* v. *District Court of E. Hampden,* 366 Mass. 525, 531-532 (1974); *Opinion of the Justices,* 373 Mass. 915, ·918 (1977), the prosecutor must generally be free to conduct his examinations in any reasonable and appropriate fashion. It has elsewhere been suggested that "the mere *asking* of repetitive questions is the practice condemned" by *Gebhard* v. *United States, supra,* the leading case. *United States* v. *Cook,* 497 F.2d 753, 766 (9th Cir. 1972) (Ely, J., dissenting) (emphasis in original), *S.C.* 489 F.2d 286 (1973). We agree that "excessive repetition of the same questions . . . serves no useful purpose." *Bursey* v. · *United States,* 466 F.2d at 1079. Short of harassment, however, it seems necessary that a prosecutor be able to use "'repetition and restatement'" where necessary for the purpose of "'flushing out the truth.'" *Commonwealth* v. *Borans,* 379 Mass. at 139.

In addition, the Commonwealth is generally free to bring indictments in as many counts as it feels appropriate in the circumstances. Our recognition of this discretion does not alter the disapproval expressed at the "practice of obtaining multiple, repetitious and overlapping . . . [counts] where fewer . . . would suffice . . . ." *Commonwealth* v. *Benjamin,* 358 Mass. 672, 677-678 (1971). *Commonwealth* v. *Winter,* 9 Mass. App. Ct. at 523-524 & n.12. See *Commonwealth* v. *Levia,* 385 Mass. 345, 351 (1982); *Commonwealth* v. *Benjamin,* 3 Mass. App. Ct. 604, 619 (1975). Nevertheless, the Commonwealth is not required to choose among the counts charged "unless necessary to protect the substantial rights of the defendant." *Commonwealth* v. *Jones,* 382 Mass. at 395 n.10. See *Commonwealth* v. *Slavski,* 245 Mass. 405, 411-413 (1923); *Fadden* v. *Commonwealth,* 376 Mass. 604, 610 (1978).

For these reasons, and because multiple convictions for the same offense now constitute multiple punishment even if concurrent sentences are imposed, the inquiry into multiplicity should focus on the defendant's con- · victions.

B. *Putting Aside Jeopardy Arguments About "Lesser Includeds."*

The defendant contends that counts 1-3 are, in a factual sense, lesser included charges within count 4. In the defendant's view, the evidence required to prove the first three counts is also required to prove the fourth, and the application of the "same evidence" test would bar multiple punishment. See *Commonwealth* v. *Gallarelli*, 372 Mass. 573, 577-579 (1977) (rejecting "same transaction" test). At first glance, these arguments have a certain appeal, particularly in view of the recent emphasis placed on the factual "realities of the offenses" in double jeopardy analyses. *Commonwealth* v. *St. Pierre*, 377 Mass. 650, 661-663 (1979), and cases cited. *Commonwealth* v. *Jones*, 382 Mass. 387, 393-394 (1981). But see *Commonwealth* v. *Crocker*, 384 Mass. 353, 359-361 (1981) (overruling in relevant part *Commonwealth* v. *Cerveny*, 373 Mass. 345 [1977]). On the other hand, the Commonwealth argues that the same evidence test is satisfied because each of the four perjuries involved a new lie about a different period of time. As a result, the Commonwealth maintains that the trial judge could have found the defendant "innocent on one [count] and guilty on the other[s] without creating any . . . conflict." *United States* v. *Tyrone*, 451 F.2d 16, 18 (9th Cir. 1971).

In our view, however, both parties are incorrect in their assumption that the same evidence test controls the result in this case. Whatever bearing factual "realities" may have on the analysis, it is now reasonably settled that the test ultimately focuses on the "elements of the statutory offenses charged." *Commonwealth* v. *Crocker, supra* at 358. *Cepulonis* v. *Commonwealth*, 384 Mass. 495, 501 & n.5 (1981). For that reason, the test has been stated to apply ordinarily only in cases involving "offence[s] against two [different] statutes." *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306 (1972). *Commonwealth* v. *Gallarelli, supra* at 577. *Commonwealth* v. *Crocker, supra* at 357. Contrast *Gallinaro* v. *Commonwealth*, 362 Mass. 728, 733 (1973).

It appears, then, that the same evidence test "has no application here since a single statute is involved and the issue is whether two [or more] discrete offenses were proved under that statute rather than a single continuing offense." *Commonwealth* v. *Winter*, 9 Mass. App. Ct. at 527 n.16. Cf. *Commonwealth* v. *Levia*, 385 Mass. 345, 350 (1982). Rather, the test has itself been viewed as a "rule of statutory construction" which merely aids in answering the "dispositive question," i.e., whether the Legislature intended to authorize multiple convictions in a given situation. *Albernaz* v. *United States*, 450 U.S. 333, 337, 344 (1981). See *Commonwealth* v. *Crocker, supra* at 359-361, and authorities cited. Since the same evidence test cannot aid us in a case involving a single statute, we look to the statute to determine whether convictions for the four perjuries here comport with the "allowable unit of prosecution" intended by the Legislature for that offense. *Bell* v. *United States*, 349 U.S. 81, 81 (1955). See *Commonwealth* v. *Levia*, 385 Mass. at 347-348. See also *Sanabria* v. *United States*, 437 U.S. 54, 69-70 (1978); *Commonwealth* v. *Winter, supra* at 524.

C. *Unit of Prosecution Authorized by G. L. c. 268, § 1.*

Under G. L. c. 268, § 1, "[t]he crime of perjury in a judicial proceeding occurs whenever one 'willfully swears or affirms falsely in a matter material to the issue or point in question.'" *Miaskiewicz* v. *Commonwealth*, 380 Mass. 153, 158 (1980), quoting from *Commonwealth* v. *Geromini*, 357 Mass. at 63. The quoted portion of the statute has been in its present form since the turn of the century, see R. L. c. 210, § 1 (1902), and statutes punishing perjury as a crime have been in force in this Commonwealth since colonial times. See generally *Commonwealth* v. *Giles*, 350 Mass. 102, 105-109 (1966). The penalties permitted under these statutes have consistently been severe, and the present statute is no exception.[10]

---

[10] Under G. L. c. 268, § 1, perjury in the trial of a capital case is punishable by imprisonment "for life or for any term of years," and perjury in

The statute manifests a strong legislative policy against perjury in judicial proceedings. The reasons underlying this policy are obvious. Perjury strikes at the heart of our judicial system and constitutes, in fact, "an obstruction of justice," the "perpetration [of which] well may affect the dearest concerns of the parties before a tribunal." *United States* v. *Norris*, 300 U.S. 564, 574 (1937). See *Bronston* v. *United States*, 409 U.S. 352, 357 (1973). In short, it is elementary that in a system which strives after truth as the predicate for doing justice, nothing is more pernicious than the deliberate introduction of falsehood. Our statute, like its Federal counterpart, was "enacted in an effort to keep the course of justice free from the pollution of perjury." *Id.*, quoting from *United States* v. *Williams*, 341 U.S. 58, 68 (1951).

In view of these concerns, the deterrent purpose of the statute, and the severity of the penalties which it provides, we conclude that, where the other elements of the offenses are present, a separate perjury is committed each time a wilful false statement is made, see *Commonwealth* v. *Geromini, supra* at 63-64, except where such statements are "substantially identical," *Masinia* v. *United States*, 296 F.2d at 880. "[I]nsofar as each count is based on a separate act, *i.e.*, a false answer to a question concerning a different material fact or point, then each count is a distinct offense of perjury as defined by the statute." *People* v. *Guppy*, 30 Ill. App. 3d 489, 494 (1975) (affirming ten of thirteen convictions for perjury before grand jury over claim that statements constituted a single offense). See Model Penal Code § 208.20, Comment 2, at 115-116 (Tent. Draft No. 6, 1957) (recommending that perjurious "statement" be construed to connote "any single item of information communicated in one sequence of declarations or responses to questioning"). See also *State* v. *LaBarre*, 114 Ariz. 440, 442-443 (Ct. App. 1977); *Commonwealth* v. *Davenport*, 255 Pa. Super. at 145-146.

---

any other case is punishable by imprisonment "for not more than twenty years." We note that these penalties have remained unchanged since they first appeared in Rev. Sts. c. 128, § 1 (1836).

Our conclusion is consistent with the result reached in other Massachusetts cases involving multiple convictions for perjury,[11] and with the reasoning of cases dealing with crimes of similar ilk, which hold that separable criminal acts may be punished as discrete offenses rather than as a single transaction. See *Commonwealth* v. *Beal*, 314 Mass. 210, 224-227 (1943) (bribery); *Commonwealth* v. *DeVincent*, 358 Mass. 592, 594-595 (1971) (attempted extortion); *Matter of DeSaulnier (No. 3)*, 360 Mass. 769, 777-780 (1971), habeas corpus granted sub nom. *Baker* v. *Eisenstadt*, 456 F.2d 382, 389-395 (1st Cir.), cert. denied, 409 U.S. 846 (1972) (contempt). See also *Commonwealth* v. *Levia*, 385 Mass. at 347-351 (armed robbery while masked).

It is also consistent with the view that where the lies are only broadly related to a particular area of inquiry the Legislature did not intend to punish multiple perjuries as a single offense. "To adopt [that] position would permit witnesses, who lie once, to escape punishment for an unlimited number of additional false statements." *People* v. *Guppy*, 30 Ill. App. 3d at 494. The sounder rule is that "[t]he commission of perjury as to one matter [should] not absolve the witness or afford him immunity as to all other matters covered by his testimony at the same hearing. The obligation to testify truly and the penalty for false swearing is present as to every material answer given by him." *Id*. at 493; *United States* v.

---

[11] In several cases the question of multiplicity was arguably presented by the overlapping perjuries charged therein, but the convictions were affirmed without discussion of that issue. See *Commonwealth* v. *Hollander*, 200 Mass. 73 (1908); *Commonwealth* v. *Walsh*, 255 Mass. 317 (1926).

We are also aware of several cases not dealing with perjury which examine overlapping periods concerning two offenses in successive prosecutions. In the circumstances of one case, the first conviction was held not to bar the second. *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 224-226 (1971), cert. denied, 407 U.S. 914, and sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910 (1972). In the circumstances of the others, the contrary conclusion was reached. *Commonwealth* v. *Robinson*, 126 Mass. 259, 260-262 (1879). *Commonwealth* v. *Dunster*, 145 Mass. 101, 102-103 (1887). All of these cases, however, involve crimes which are considered continuing offenses. They are inapplicable here for the reasons stated in *Commonwealth* v. *Stasiun*, 349 Mass. 38, 43-47 (1965).

*Masters,* 484 F.2d at 1253. *United States* v. *Cason,* 39 F. Supp. 731, 734-735 (W.D. La. 1941). *State* v. *LaBarre, supra* at 442 (all quoting from *Seymour* v. *United States,* 77 F.2d 577, 581 [8th Cir. 1935]).

Applying these principles, in light of the cases, we conclude that the defendant's convictions for four perjuries must stand. Although it is true that the extended periods involved in counts three and four create some overlap, each count involves a new lie about a period which is separate and distinct from the others. We are satisfied that the four perjuries are not "substantially identical," and that the overlap may properly be treated as immaterial to the result. Cf. *Gallinaro* v. *Commonwealth,* 362 Mass. at 732-733; *Commonwealth* v. *Peretz,* 212 Mass. 253, 256 (1912).

Finally, we reject the defendant's suggestion that the prosecutor improperly fragmented what might have been a single perjury into multiple separate offenses by the manner in which he asked his questions. The generally broad discretion a prosecutor possesses with respect to examination before a grand jury is limited by the rule that he may not break down an inquiry in order to "run up a possible perjury sentence indefinitely."[12] *Gebhard* v. *United States,* 422 F.2d at 290. The fact that some questions overlap will not, standing alone, establish impermissible fragmentation. It is unquestioned that separate prosecutions for each year in which Quincy submitted fraudulent reports would be justified (see *Commonwealth* v. *Cerveny,* 373 Mass. at 346-348), and that the defendant's testimony was material to the grand jury's scrutiny of each particular year. *Id.* at 352. See *Commonwealth* v. *Borans,* 379 Mass. at 135. In these circumstances the prosecutor had the right, if not the duty, to

---

[12] Our cases express a similar concern. See, e.g., *Commonwealth* v. *Goldstein,* 114 Mass. 272, 278 (1873); *Commonwealth* v. *Coyne,* 207 Mass. 21, 24 (1910); *Commonwealth* v. *Benjamin,* 358 Mass. at 677-678; *Commonwealth* v. *Gallarelli,* 372 Mass. at 578-579; *id.* at 580-582 (Kaplan, J., concurring); *Commonwealth* v. *St. Pierre,* 377 Mass. at 662-663; *Commonwealth* v. *Levia, supra* at 351; *Commonwealth* v. *Winter,* 9 Mass. App. Ct. at 522-528.

pin down the facts of Boynton's employment one year at a time.  Indeed, if the prosecutor thought the defendant was likely to perjure himself, detailed inquiry was appropriate since "[p]recise questioning is imperative as a predicate for the offense of perjury." *Bronston* v. *United States*, 409 U.S. at 362.  Had he continued the inquiry there is no doubt that the defendant could have been convicted on a separate count for each of the six years as to which his testimony was false.  In the absence of any indication that the questioning was conducted in bad faith, or indication that the prosecutor called the defendant before the grand jury merely for the purpose of extracting perjuries for which to indict him (see *Brown* v. *United States*, 245 F.2d 549, 554-555 [8th Cir. 1957]; contrast *Commonwealth* v. *Borans, supra* at 138-139), we see no basis for concluding that the questioning was improperly fragmented.[13]

2.  The defendant argues three additional issues, each of which lacks substantial merit.

A.  The defendant claims that the trial judge should have excluded certain testimony given by the Commonwealth witnesses Bardon and Vogel on the ground that it was "recently fabricated," and that without this testimony there is no evidence that the defendant's perjuries were wilful and intentional.  The fact that these witnesses did not give this

---

[13] In closing we note that in the Federal courts it has been the practice "to charge perjury before the grand jury, committed in the course of the same appearance, in a one count indictment with each false declaration set forth in a particular specification." *United States* v. *Berardi*, 629 F.2d at 729.  *United States* v. *Bonacorsa*, 528 F.2d 1218, 1221-1222 (2d Cir.), cert. denied, 426 U.S. 935 (1976), and cases cited.  See *United States* v. *Isaacs*, 493 F.2d 1124, 1155 (7th Cir.), cert. denied, 417 U.S. 976 (1974) (permitting joinder in single count); *United States* v. *De La Torre*, 634 F.2d at 794-795 (permitting but not requiring joinder).  See also *United States* v. *Andrews*, 370 F. Supp. at 368 n.1 (illustrating joinder of ten perjuries elicited in response to month by month questioning).  It is also established that "[s]o long as these separate specifications aver different falsehoods, the indictment will not be held . . . duplicitous," *United States* v. *Berardi, supra* at 729, and that "proof of any of the specifications is sufficient to support a verdict of guilty," *United States* v. *Bonacorsa, supra* at 1222.

testimony before the grand jury more than a year earlier did not establish that the testimony was recently fabricated since there was no showing that they were asked about the matter at that time. Moreover, the doctrine upon which the defendant relies is not a rule which would require the exclusion of the testimony. See *Commonwealth* v. *Zukoski*, 370 Mass. 23, 26-27 (1976). See also Liacos, Massachusetts Evidence § 9(D), at 168-169 (5th ed. 1981). Compare Proposed Mass.R.Evid. 801(d)(1)(B) (1980), noted in Liacos, *supra* § 13(A), at 264. The claim of recent fabrication bore on the credibility of the witnesses and the weight to be given their testimony. The judge "could not properly have . . . [excluded the testimony] on the ground that it was incredible as a matter of law." *Commonwealth* v. *Lewis*, 12 Mass. App. Ct. 562, app. 574 (1981).

B. The defendant contends that the Commonwealth violated the pretrial conference agreement, see Mass.R.Crim. P. 11, 378 Mass. 862 (1979), by failing to make timely disclosure of statements made by Bardon and Vogel to the Commonwealth's investigator. The Commonwealth concedes that the agreement required it to disclose written statements of its witnesses, and that the information obtained from Bardon and Vogel was reduced to writing in the investigator's reports, but argues that these reports do not constitute "statement[s]" as defined by Mass.R.Crim.P. 14(d), 378 Mass. 881 (1979). Compare *Commonwealth* v. *Lewinski*, 367 Mass. 889, 902 (1975), quoted in *Commonwealth* v. *Borans, supra* at 151 (stating prior definition). We do not reach the merits of the Commonwealth's argument, however, since the defendant has failed to show that he was prejudiced by any failure to make timely disclosure of the reports.

The Commonwealth first received the information relevant here from Vogel on a Friday and from Bardon on the following Monday. The trial commenced on Tuesday. Bardon testified on Wednesday, and defense counsel received a copy of the report containing his statements at the conclusion of his direct testimony. Cf. *Commonwealth* v. *Lewin-*

*ski, supra.* Although the judge then offered counsel an opportunity "to defer . . . cross-examination of the witness," apparently until the following morning, counsel read the report and chose to proceed with his examination. Vogel was the next witness. Although counsel apparently did not receive a copy of the report containing her statements prior to cross-examination, the Commonwealth had previously summarized her testimony in its trial brief, which counsel acknowledged receiving. In addition, the substance of Vogel's testimony on the point relevant here was identical to that given by Bardon. On these facts, the defendant has failed to show that he was prejudiced by any violation of the pretrial conference agreement. See *Commonwealth* v. *Gilbert*, 377 Mass. 887, 895-896 (1979); *Commonwealth* v. *Cundriff*, 382 Mass. 137, 150-151 (1980); *Commonwealth* v. *Spann*, 383 Mass. 142, 149-150 (1981).

C. The defendant argues that the thirteen days which elapsed between the end of the trial and the formal entry of the guilty findings manifests that the judge harbored uncertainty inconsistent with findings of guilt beyond a reasonable doubt. On the first day following the trial, however, the judge reported to counsel that he had reviewed the evidence and was "satisfied beyond a reasonable doubt that there has been perjury" as charged. The judge then continued the case for the express purpose of considering, and allowing the parties to research, the question of multiplicity. It is quite clear from the transcript that defense counsel understood the posture of the case at that time and in several subsequent hearings. We are satisfied that the judge harbored no uncertainty as to the defendant's guilt beyond a reasonable doubt.

*Judgments affirmed.*